## COLEMAN v. JAMES et al.

No. 8935—Opinion Filed Dec. 11, 1917.

(169 Pac. 1064.)

(Syllabus.)

1. **Marriage—Common-Law Marriage—Validity.**

At common law, marriage being a civil contract founded on the consent of the parties, no legal forms or religious solemnities are required and no special mode of proof, and in the absence of civil requirements a marriage might result without formalities, or at least other than those required of the parties as evidence of their assent to the marriage contract.

2. **Same—Presumption—Circumstantial Evidence.**

Such marriage may be proved by circum-

stantial evidence, and, since the presumption is in favor of marriage and against concubinage, the fact that a man and woman have openly cohabited as husband and wife for a considerable length of time, holding each other out and recognizing and treating each other as such by declarations, admissions, or conduct, and are accordingly generally reputed to be such among their relatives and acquaintances and those who come in contact with them, may give rise to a presumption that they have previously entered into an actual marriage, although there be no direct testimony to that effect.

### 3. Same—Evidence—Declarations.

Where a man and woman cohabit together, and the question to be decided is whether the character of her intercourse with him is matrimonial or meretricious, the declarations of the parties during such intercourse in relation to the nature thereof are admissible in evidence as part of the res gestae.

### 4. Same.

On the issue as to the existence of a common-law marriage, declarations of the alleged husband, deceased, that he was not married to the alleged wife, are admissible as part of the res gestae for the purpose of disproving such marriage, and likewise deeds executed by him as a single man.

### 5. Evidence—Admissions.

The admissions of a party of the fact of his marriage are against his interest, and when made under circumstances of deliberation are entitled to great weight. Denials, on the contrary, being declarations in his own interest, are entitled to little weight in opposition thereto.

### 6. Same—Sufficiency of Evidence to Disprove Marriage.

Record examined, and held, that the evidence adduced at the trial was not sufficient to sustain the burden cast upon the defendants of plainly showing that the relation shown to exist between the plaintiff and the testator was meretricious and not matrimonial.

### 7. Trial—Separate Findings of Law and Fact—Purpose of Statute.

The object of section 5017, Rev. Laws 1910, is to enable the parties to have placed on the record the facts upon which the rights litigated depend, as well as the conclusions of law which the court drew from the facts found, so that exception may be taken to the views of the trial court as to the law involved in the trial.

### 8. Wills—Contest—Findings and Conclusions—Sufficiency.

Record examined, and held, that the findings of fact and conclusions of law of the trial court are too general to meet the requirements of the statute.

Error from District Court, McCurtain County; C. E. Dudley, Judge.

Will contest by Lizzie Coleman (nee McCoy) against Mayo James, executor of the will of W. A. Coleman, deceased, and others. From a judgment of the district court, on the trial de novo on appeal from a judgment of the county court admitting the will to probate, in favor of the defendants, denying the contest, and ordering the county court to probate the will, contestant brings error. Reversed and remanded for a new trial.

Howe & Stanley, for plaintiff in error.

Ledbetter & Hudson, for defendant in error Mack Coleman.

T. J. Barnes, for defendants in error Grace Coleman and Bell Coleman.

Spaulding & Carr, for defendants in error Mayo James and Tally Coker.

McPherren & Cochran and M. F. Hudson, for defendants in error Romie Parsons, Eddy Coleman, Nellie Cook, and Dixie Coleman.

KANE, J. The questions involved herein arise out of the contest of the will of W. A. Coleman, deceased. The will, which disposed of the entire estate of the testator, did not include the name of Lizzie Coleman, the plaintiff in error, as beneficiary, and she, claiming to be his wife, contested the same before probate, alleging that the will is void and of no effect in this:

"That the testator was a married man at the time of his death, being married to this contestant, and said will attempts to bequeath and devise more than two-thirds of his property away from his said wife, this contestant."

Thereafter the contest was duly heard by the county court of McCurtain county, and judgment was rendered admitting the will to probate, whereupon an appeal was duly perfected to the district court of said county, where a trial de novo was had, which resulted in a judgment in favor of the defendants in error denying the contest of the plaintiffs in error, and ordering the county court to probate the said will. It is to reverse the judgment and order of the district court that this proceeding in error was commenced.

Whilst the formal assignment of errors contains many grounds for reversal, those we deem it necessary to notice may be summarized briefly as follows: (1) The court erred in permitting the defendants in error

to prove by third parties declarations of the deceased that he was not married to the plaintiff in error, and in proving by third parties declarations of the deceased as to nonmarriage with the plaintiff in error, in every form and character so sought to be proven, and to which the plaintiff in error objected each and every time said testimony was offered, on the ground that the declarations of deceased persons as to nonmarriage in any form or character were irrelevant, incompetent, and immaterial, self-serving, and hearsay, and did not tend to prove or disprove the issue in this cause; (2) the court erred in admitting in evidence deeds and instruments executed by the deceased testator, in which he acknowledged he was a single man and unmarried person, for the reason that such testimony was in the nature of a declaration of nonmarriage and was incompetent, irrelevant, and immaterial, self-serving, and hearsay; (3) the court erred in his judgment and decision in this cause in this, that said judgment and decision are not sustained by sufficient evidence, and the presumption of marriage was established by evidence offered by the plaintiff in error, and the evidence offered by the defendants in error, consisting of declarations alone, was not sufficient to overcome that presumption; (4) the court erred in refusing to make special and separate findings of law and fact in writing covering said cause in its entirety, which was requested by the plaintiff in error at the close of the testimony in the cause.

The contention of the plaintiff was that there was a common-law marriage consummated between herself and the testator in July, 1911, and from that time until the death of the latter, a period of 4½ years the contestant and the deceased lived and cohabited together as husband and wife, the deceased holding said contestant out to the world as his wife, she holding the deceased out to the world as her husband. The uncontradicted evidence introduced by the plaintiff for the purpose of establishing this status may be stated substantially as follows: Some time during the year 1910 the testator employed the plaintiff as nurse and to assist generally with the household work of his family; she at that time being a single woman, and he being a widower with a family consisting of several children and his mother-in-law. The plaintiff continued to reside in the home of the testator in the foregoing capacity from the time of her employment until the first part of July, 1911, about which time she accompanied him to Hot Springs, Ark. Immediately after reaching Hot Springs the testator wrote a letter to the mother of the plaintiff in error, in which he said:

"Dear Mother Lizzie and I are Here at Hot Springs. We got Married yesterday at Texarkana. Lizzie is not well. We expect to Stay Here about Aug 15th then go to St. Louis for awhile and will be in Okla. after that come and see us for I think I Have the sweetest and best looking Indian in Oklahoma."

One of the witnesses for the defendant in error, who accompanied the plaintiff in error and testator on this trip to Hot Springs, testified in effect that whilst on the way over the plaintiff and testator were affectionate toward each other, but they "sat up straight and behaved themselves"; that on the way back they were more affectionate; that while at Hot Springs the testator roomed with the witness, but on the way back the testator and the plaintiff in error took a room together at a hotel, and in other ways acted toward each other as husband and wife. Several minor children of the testator, who resided with him at Idabel, testified that immediately upon his return to his home he introduced the plaintiff to them as their "new mother" and installed her in their home as such, and that thereafter until his death their demeanor toward each other was that of husband and wife. Other witnesses on behalf of the plaintiff testified that they had known the testator for many years during his lifetime; that after the testator and plaintiff returned from Hot Springs to the residence of the former both stated that they had been married; that thereafter they appeared together in public places, picture shows, etc., the testator introducing the plaintiff to his friends as his wife; that many respectable persons including the adult married children of the testator and their spouses, visited the plaintiff in error and the testator at their home during the time they thus lived together, and that this condition continued to exist from the time of the visit to Hot Springs up to the time of the death of the testator. Mrs Fling, a professional nurse at Hugo, testified that during the latter part of 1911 the testator brought the plaintiff in error to Hugo for medical treatment; that he introduced the witness to her as his wife and placed her in the professional care of the witness for the period of two weeks; that during this time the testator wrote letters to the plaintiff in error addressed to "Mrs. Lizzie Coleman," and called over the telephone almost every day inquiring about her welfare. Other witnesses testified that the

plaintiff in error cared for the children of the testator and for the testator when he was sick, and that the testator cared for the plaintiff in error when she was sick. Other witnesses testified that in the neighborhood where they lived it was "general neighborhood talk" that the testator and plaintiff in error were husband and wife. Thereupon the defendant in error, without attempting to question the credibility of the witnesses for the plaintiff in error, or the truthfulness of their testimony, introduced the evidence complained of in the first assignment of error.

It is well settled that repeated acknowledgments by the man of his marriage with a certain woman, are direct evidence of marrige. Comly's Estate, 185 Pa. 208, 39 Atl. 890; 8 Enc. Ev. 475. It is also well settled that, at common law, marriage being a civil contract founded on the consent of the parties, no legal forms or religious solemnities are required and on special note of proof.

"Hence, at common law, and in the absence of civil requirements, a marriage might result without formalities, or at least other than those required of the parties as evidence of their assent to the marriage contract." 3 Modern American Law, 427; 6 Kent, Com. 86, 87.

In Fender v. Segro, 41 Okla. 318, 137 Pac. 103, it was said that:

"Marriage, it is true, may be proved by circumstantial evidence; and, since the presumption is in favor of marriage and against concubinage, the fact that a man and woman have openly cohabited as husband and wife for a considerable length of time, holding each other out and recognizing and treating each o'her as such by declarations, admissions, or conduct, and are accordingly generally reputed to be such among their relatives and acquaintances and those who come in contact with them, may give rise to a presumption that they have previously entered into an actual marriage, although there may be no direct testimony to that effect."

To the same effect are: Coachman v. Sims et al., 36 Okla. 536, 129 Pac. 845; Crickett et al. v. Hardin, 60 Okla. 57, 159 Pac. 275; Carney v. Chapman, 60 Okla. 49, 159 Pac. 1125.

Under the rule laid down in the foregoing authorities, and many more which might be cited to the same effect, there is no room for doubt that the plaintiff in error adduced at the trial both direct and circumstantial evidence tending to establish her marriage with the testator.

To support the issues on their behalf the defendants in error introduced no evidence for the purpose of discrediting any of the witnesses who testified on behalf of the plaintiff in error, relying wholly for success upon evidence of the class complained of in the first assignment of error. While there is considerable conflict of authority on the question of the admissibility of such testimony, it has been the settled law of this jurisdiction for many years that where a man and woman cohabit together, and the question to be decided is whether the character of her intercourse with him is matrimonial or meretricious, the declarations of the parties during such intercourse in relation to the nature thereof are admissible in evidence as part of the res gestae. Reaves v. Reaves, 15 Okla. 240, 82 Pac. 490, 2 L. R. A. (N. S.) 353. In Craufurd v. Blackburn, 17 Md. 49, 77 Am. Dec. 323, it was held:

"Upon question of marriage vel non, declarations of parties themselves, if deceased, that they were or were not married, provided they were made ante litem motam, are admissible evidence of the fact declared."

In that case it is also held:

"Upon issue of marriage vel non declarations of alleged husband deceased that he was never married to alleged wife are admissible to disprove the alleged marriage, and likewise his will, containing declarations to the same effect."

To the same effect are: In the Matter of Taylor, 9 Paige's Ch. (N. Y.) 611; Topner v. Perry, 197 Mo. 531, 95 S. W. 203, 114 Am. St. Rep. 777; In re Imboden's Estate, 111 Mo. App. 220, 86 S. W. 263; Greenawalt v. McEnelley, 85 Pa. 352.

In the last-cited case it was held:

"The admissions of a party of the fact of his marriage are against his interest, and when made under circumstances of deliberation are entitled to great weight. Denials, on the contrary, being declarations in his own interest, are entitled to little weight in opposition thereto."

In Chancey v. Whinnery, 47 Okla. 272, 147 Pac. 1036, Mr. Justice Sharp, in discussing a similar question, says:

"Every intendment of law is in favor of matrimony. The law is so positive in requiring a party who asserts the illegality of a marriage to take the burden of proving it, that such requirement is enforced, even though it involve the proving of a negative. When a marriage has been shown in evidence, whether regular or irregular,

and whatever the form of the proofs the law raises a presumption of its legality, not only casting the burden of proof on the party objecting, but requiring him throughout and in every particular plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void, Nixon et al. v. Wichita Land & Cattle Co., 84 Tex. 408, 19 S. W. 560."

Measured by the foregoing rule, it seems to us the defendants failed to sustain the burden cast upon them of plainly making the fact appear that the relation shown to exist between the plaintiff and the testator was meretricious and not matrimonial.

We are also of the opinion that the findings of fact and conclusions of law prepared by the trial court, upon request of the plaintiff, were too general to meet the requirements of the statute (section 5017, Rev. Laws 1910). They amount to no more than a general finding and judgment in favor of the defendants in error. The object of the statute is to enable the parties to have placed on the record the facts upon which the rights litigated depend, as well as the conclusions of law which the court drew from the facts found, so that exception may be taken to the views of the trial court as to the law involved in the trial. Allen v. Wildman, 38 Okla. 652, 134 Pac. 1102; Simpson Tp. v. Hill, 40 Okla. 233, 137 Pac. 348; In re Robbins' Estate, 99 Minn, 236, 109 N. W. 229.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded for a new trial

All the Justices concur.