### DAVIS et al. v. REEDER et al.

No. 12070—Opinion Filed June 3, 1924.

(Syllabus.)

**1. Marriage—Validity of Indian Tribal Marriages.**

Marriage between citizens of the Creek Nation residing therein, contracted according to the usage and custom of the tribe of which they are members, at a time when the tribal relations existed, and were recognized by the tribal government, will be sustained and held regular in the courts of this state, and the issue of said marriage shall be deemed legitimate.

**2. Marriage — Presumption of Marital Relation.**

Cohabitation and reputation do not constitute marriage, but only evidence tending to raise a presumption of marriage from circumstances. In any case the cohabitation must not be meretricious, but matrimonial, to raise the presumption.

**3. Same.**

Such presumption of marriage does not arise where it is not shown that there was a recognition of the marriage relation by the parties themselves, and a holding out of each other as husband and wife, respectively.

**4. Same—Insufficiency of Evidence.**

Record examined, and held, the evidence, when viewed in its strongest aspect, fails to establish plaintiff's case, and the court did not err in sustaining a demurrer to plaintiff's evidence

Error from Superior Court. Okmulgee County; H. R. Christopher, Judge.

Action by Mrs. George M. Davis and others against J. N. Reeder et al. Judgment for defendants, and plaintiffs bring error. Affirmed.

John Caruthers, Joseph C. Stone, and J. C. Wright, for plaintiffs in error.

E. T. Noble, S. L. O'Bannon, and Cochran & Ellison, for defendants in error.

McNEILL, J. This action was commenced in the superior court of Okmulgee county by George M. Davis to recover possession of an undivided one-half interest in certain lands constituting a part of the allotment of Sanubure McIntosh, a Creek Indian, who died in infancy, unmarried and without issue.

The petition alleged that August McIntosh and Emma Jordan were husband and wife, and Sanubure McIntosh was the issue of said marriage and was born during wedlock. It is further alleged that upon the death of the said Sanubure McIntosh, one-half of the land descended to his father, August Mc-Intosh, and one-half to his mother, Emma Jordan. The plaintiff relies upon a deed executed by August McIntosh dated November 12, 1906. The defendant filed an answer, consisting of a general denial, pleading the statute of limitations and several other defenses. George M. Davis died, and the case was revived in the name of his widow, Mrs. George M. Davis, and his two minor children, Georgia Bernice Davis and Charles James Davis. The case was tried to a jury. The plaintiffs introduced their evidence and rested, and defendant interposed a demurrer thereto, which was sustained by the court, and judgment was rendered in favor of the defendant and against the plaintiffs. From said judgment the plaintiffs have appealed.

The first question for consideration in determining whether the court erred in sustaining the demurrer to plaintiffs' evidence is whether the evidence of the plaintiffs, when considered in its most favorable light, was sufficient to authorize the court to submit to the jury the question of whether August McIntosh and Emma Jordan were married, and if Sanubure McIntosh was the issue of said marriage. There is no contention or evidence in the record that these people were married, unless it can be said they were married according to the Indian custom, or as a common-law marriage. The evidence as to the Indian custom is very indefinite and uncertain. Only one witness was asked what the Creeks' custom was when a man and woman wanted to live together as husband and wife. This witness gave an illustration, where the girl had a father and mother—that the man would go and stay at the home for a week or ten days, did not do anything around the place, but if the father or mother took a liking to the young man, they would give him the girl and they would live together as man and wife. He was then asked the following question: "Q. Under that custom, all the man and wife would do would be to commence living together? A. Yes, sir." When this answer is considered, in connection with the previous question, it must be construed to mean, when a man and woman commenced living together as husband and wife, it would be considered a marriage according to the Creek custom. This contention is also reflected in the previous opinions of this court relating to Indian marriages and common-law marriages.

This court has upon numerous occasions dealt with marriages under the custom of the Creek Tribe of Indians. In the case of Fender v. Segro, 41 Okla. 319, 137 Pac. 103, in discussing the question of marriage, and

the sufficiency of the evidence to prove marriage, this court said:

"An irregular, limited, or partial cohabitation is not sufficient to create a presumption in favor of marriage. It must be continuing and complete and such as is usual between persons lawfully married."

The court on page 324 stated as follows:

"Marriage, it is true, may be proved by circumstantial evidence; and, since the presumption is in favor of marriage and against concubinage, the fact that a man and woman have openly cohabited as husband and wife for a considerable length of time, holding each other out and recognizing and treating each other as such by declarations, admissions, or conduct, and are accordingly generally reputed to be such among their relatives and acquaintances and those who come in contact with them, may give rise to a presumption that they have previously entered into an actual marriage, although there may be no direct testimony to that effect."

This court in the case of James v. Adams, 56 Okla. 450, 155 Pac. 1121, held, in substance, that where a man and woman had lived together as husband and wife for a number of years, it is sufficient to create the presumption of marriage.

In the case of Johnson v. Dunlap, 68 Okla. 216, 173 Pac. 359, the court in the body of the opinion stated:

"The question of the validity of Indian tribal marriages is well settled in this jurisdiction. The legality of such marriages contracted between members of any Indian tribe, in accordance with the laws and customs of such tribe, where the tribal relations and government existed at the time of the marriage, is one generally, if not universally recognized."

In the case of Coleman v. James, 67 Okla. 112, 169 Pac. 1064, this court discussed a common-law marriage, and what were sufficient facts to prove marriage under the common law. This court in the above case also discussed the force and effect of an admission of one of the parties, against his interest, and statements made in favor of his interest, and the weight to be given such testimony. The above cases all reflect the opinion that where a party seeks to prove a marriage by facts and circumstances, it is necessary to prove a continuous cohabitation of the parties as husband and wife, that is, they had held themselves out as man and wife; and second, that the parties were generally recognized and reputed to be man and wife, by their friends and relatives.

The burden of proof in this case was upon the plaintiffs to prove a marriage. They sought to do this by circumstantial evidence.

The facts as disclosed by the evidence in the above case may be stated about as follows: Sanubure McIntosh was the child of Emma Casteel, or Emma Jordan, and born during the year 1895 or 1896. August McIntosh had lived for about a year prior to that time with a woman named Emma Robinson. She left and went home to her mother or sister, where she gave birth to a child which was enrolled under the name "George McIntosh." She returned, and she and August McIntosh continued to live together as husband and wife until her death, raising other children, the issue of such relations.

Emma Casteel, along about the year 1895 or 1896, was living at an old lady's by the name of Sally Barnett. When Emma Robinson and August McIntosh separated and Emma Robinson went home, he, August McIntosh, went to stay at Sally Barnett's place, where Emma Casteel was staying. They both stayed there for about a year, in and around that vicinity. When Emma Robinson returned, she and August McIntosh began living together. The evidence regarding whether Emma Casteel continued living at Sally Barnett's for a year or so thereafter, is not clear, but she gave birth to the child, Sanubure McIntosh, and in a year or two thereafter began living with Coley Jordan, with whom she lived for many years thereafter as his wife.

The plaintiffs, to prove the marriage, produced Ben Williams, who testified that he was a Creek freedman, and acquainted with August McIntosh and Emma Casteel. He was asked the following question: "Q. Did Emma Jordan and August McIntosh ever live together that you know of? A. No, sir; no more than I saw them over there. Saw them around there together. All I seen, never had a home of their own, stayed with the old lady (being old lady Barnett)." He was asked who was the father of Sanubure McIntosh, and he answered: "August McIntosh, that is what she says, that is what he says. I guess it was." The witness was asked if it was reputed in the neighborhood that August McIntosh and Emma Jordan were living together as husband and wife, and he answered, " They said that Emma got a kid by August." The witness was asked several questions regarding if he knew what people said generally as to whether they were living together as husband and wife, and witness answered, "He did not know." The substance of his testimony is that he had seen August and Emma around together and they stayed at the same place together and it was reported that "Emma got a kid by August."

Louis Robinson was next produced as a witness. He was a brother of the Emma Robinson who lived with August McIntosh as his wife. He testified of seeing Emma and August around Sally Barnett's place and Jim Roberts' place. They stayed around there about a year. They did not have a separate house; did not know whether they occupied the same room. The witness worked several miles from where they were staying. He was asked this question: "Q. Louis, you never heard Emma Casteel claim to be the wife of August McIntosh? A. They never told me. Q. August never claimed to be the husband of Emma Casteel? A. Never said. Q. You don't remember them living together as man and wife? A. Under the Creek law that is the way they live. I just thought they were man and wife."

Willie Hawkins was produced as a witness and testified, in substance, that he knew Emma Casteel and August McIntosh; that they lived around the Jim Roberts and Flora Grayson place for about a year. He only visited there about three times; didn't know whether they occupied the same room or not. Saw them around together. The above were the only three witnesses that gave testimony for the purpose of proving marriage.

One witness, or maybe two of them, testified that August McIntosh had told them that Emma Casteel was his wife. Only one witness was asked whether they were generally reputed to be man and wife, and that witness answered that he did not know. No witness testified they ever cohabited together as man and wife. nor is the evidence sufficient to support such an inference. In regard to whether the statement purported to have been made by August McIntosh, that she was his wife, has any probative force, the evidence discloses that August McIntosh is still living and the plaintiffs in this action relied upon a deed made by August McIntosh. If this statement could be considered as evidence, the same would necessarily simply be a declaration in favor of his interest. The probative force of such testimony, when made by one of the parties, is discussed in the case of Coleman v. James. supra. We do not think the evidence can have any probative force when the party himself is living. and he is the one, or his assignees, who have the burden of proving the marriage, without the party himself taking the stand, nor is the same sufficient to authorize the submission of the question of marriage to the jury.

The evidence, when viewed in its strongest aspect, simply establishes that for a period of time August McIntosh and Emma Casteel were seen together quite frequently and stayed at the same place, living with other parties, and during said time or shortly thereafter she gave birth to a child, and it was generally reputed that August McIntosh was the father of said child. This court in the case of New York Plate Glass Co. v. West, 61 Okla. 47, 160 Pac. 54, stated that where the evidence of plaintiff, viewed in its strongest aspect, fails to establish plaintiff's case, the court should sustain a demurrer thereto. We think there was no error in the trial court sustaining a demurrer to the evidence. The record fails to disclose any evidence of a marriage, but the party relies upon circumstances to prove said fact, and where the circumstances are insufficient to establish a cohabitation as man and wife, and it is acknowledged by the parties to be such a cohabitation, and fails to disclose that the parties are reputed to be man and wife, the same is insufficient to submit said question to the jury.

For the reasons stated, the judgment of the trial court is affirmed.

NICHOLSON, HARRISON, LYDICK, and GORDON, JJ., concur.