### IN RE KIESEL'S ESTATE*
### KIESEL v. HENECKER ET AL.

(No. 1282; September 21, 1926; 249 Pac. 81.)

(Rehearing Denied, without Opinion, Feb. 8, 1927.)

TIME—NOTICE OF DEPOSITION—HOMESTEAD—JURY—MARRIAGE—PRESUMPTION OF COMPETENCY TO MARRY—DECLARATION—BURDEN OF PROOF—APPEAL AND ERROR—OBJECTION.

1. Under Comp. St. 1920, § 5839, holidays and nights are not excluded from time required after giving of notice to enable party to travel to place of taking deposition.

2. Under Comp. St. 1920, §§ 6879, 6880, children of deceased husband may appear to resist widow's claim to homestead and other property.

3. Under Comp. St. 1920, § 6740, when jury was demanded on trial of claim by widow to have homestead and other property set aside, granting jury trial was proper.

4. On trial of claim by alleged widow of decedent to have homestead and other property set aside, evidence of existence of undissolved prior marriage at time of her alleged marriage to decedent *held* sufficient to go to jury, in view of Laws Mo. 1921, p. 468, amending Rev. St. 1919, § 7302, as to common-law marriages.

5. Presumption of competency to marry arising from marriage may be overcome by showing previous ceremonial marriage, followed by cohabitation or common-law marriage by reputation and cohabitation, or by any competent evidence.

6. Effect of declarations as to fact of marriage depends on their character and circumstances under which they were made, and they may at times be alone sufficient in civil case to prove marriage.

7. Widow of deceased petitioning to have homestead and other property set aside to her has burden of proving marriage with deceased.

8. On showing of marriage of party claiming homestead and other property with decedent, strong presumption of its validity arose, so that guardians of decedent's children, opposing claim and attacking marriage with decedent because of undissolved marriage to another, had burden to overcome plaintiff's prima facie case and to prove marriage with other person and that it was not legally dissolved.

9. On petition by alleged widow to have homestead and other property set aside to her, when those opposing petition made prima facie showing as to her marriage to another at time of her marriage to decedent, she had burden of producing proof to overthrow such prima facie case.

10. On petition by alleged widow to have homestead and other property set aside to her, evidence *held* not to overcome, as matter of law, prima facie showing that at time of marriage to decedent petitioner was married to another.

11. On petition by alleged widow to have homestead and other property set aside to her, defended on ground that at time of marriage she was married to another, instruction that if former marriage was originally void subsequent marriage in good faith would be presumed from cohabitation after removal of disability *held* not prejudicial, and in view of further instruction that presumption of marriage to decedent must be overcome by clear and convincing evidence.

12.   On petition to have homestead and other property set aside
      to alleged widow, testimony that claimant became drunk,
      causing decedent's daughter to leave home, although ir-
      relevant, *held* not cause for reversal, in absence of proper
      objection or of any objection to part of it.

*See Headnotes:   (1) 18 C J p. 668 n. 22; 38 Cyc. p. 333 n. 74.
(2) 29 C J p. 1032 n. 92 New.   (3) 35 C J p. 180 n. 93.   (4) 38 C J
p. 1345 n. 98.   (5, 6) 38 C J p. 1325 n. 70; p. 1336 n. 41; p. 1337 n.
53; p. 1343 n. 82, 83; p. 1344 n. 95.   (7-10) 38 C J p. 1321 n. 54; p.
1329 n. 87, 88; p. 1330 n. 91.   (11) 4 C J p. 1029 n. 30; 38 C J p.
1344 n. 96.   (12) 3 C J p. 808 n. 91.

APPEAL from District Court, Fremont County; CYRUS
O. BROWN, Judge.

Probate proceedings in the matter of the estate of
Charles J. Kiesel, deceased.   Petition by Effie P. Kiesel,
administratrix of the estate of Charles J. Kiesel, deceased,
to have a homestead and other property set aside to her,
opposed by W. R. Henecker, guardian of the estate of
Thelma Kiesel, a minor, and another.   From a judgment
for defendants, claimant appeals.

*John J. Spriggs,* for appellant.

Appellant was entitled to the exempt property of the
estate:   6879, 6880 C. S.; In re Black's Estate, 216 Pac.
1059.   There is a presumption of marriage from cohabita-
tion, apparently not immoral; Keezer on Marriage and
Divorce, 77-93; common law marriages grow out of good
faith, supra; Clark v. Barney, 103 Pac. 599; 18 R. C. L.
45.   An unlawful relation, by removal of impediments,
may be followed by a legal marriage; 18 R. C. L. 39.
Proof tending to fix liability, not denied by party having
it within his power to do so, justifies inference of liability;
Studebaker Corp. v. Hanson, 160 Pac. 336.   To overcome
presumption that ceremonial marriage, followed by four-
teen years of cohabitation is legal, proof of former undis-
solved marriage of one of the parties must be conclusive;
Sparks v. Ross, 65 Atl. 977; Hiler v. People, (Ill.) 41 N. E.

181; Lampkin v. Ins. Co., (Colo.) 52 Pac. 1040; Moore v. Moore, (Tenn.) 52 S. W. 778. The presumption of marriage of a man and woman, arising from cohabitation and repute, falls before proof of the subsequent marriage of the man to another woman during the lifetime of the former; Norman v. Goode, (Ga.) 38 S. E. 317; Pittinger v. Pittinger, (Colo.) 64 Pac. 195; Weening v. Temple, (Ind.) 41 N. E. 600; Goldwater v. Burnside, (Wash.) 60 Pac. 409. Marriage is the civil status of one man and one woman united by contract; State v. Bittick, (Mo.) 15 S. W. 325. There was no proof of common law marriage; Conter v. Smith, (Colo.) 222 Pac. 352; Becker v. Becker, (Wis.) 140 N. W. 1082; Schaeffer v. Richardson, (Md.) 93 Atl. 391. There was no evidence of cohabitation or repute as to the alleged Sebel marriage; Jones on Evidence, 370. The alleged divorce petition was incompetent as evidence; 10 R. C. L. 1104-07; In re Miller's Estate, 229 Pac. 850. The court erred in permitting counsel for respondents to introduce a mass of incompetent evidence.

*A. H. Maxwell* and *William E. Hardin,* for respondents.

There are 139 specifications of error urged in support of the appeal; we will discuss them in a general way; guardians of the minors believe that they established, by competent evidence, the marriage of petitioner before her marriage to Kiesel and that her husband lived, undivorced, at the time of the alleged marriage to Kiesel; this fact was established by petitioner's declarations and testimony of various witnesses; moreover, she did not establish a marriage to Kiesel; 8 Enc. Ev. 469. Petitioner's declarations were sufficient to establish her marriage to Sebel; Patterson v. Gaines, 47 U. S. 550; Gaines v. Hennen, 65 U. S. 553; Greenwalt v. McEnelley, 85 Pac. 352; In re Drinkhouse's Estate, 151 Pac. 294, 24 Atl. 1083; State v. Pendleton, 72 Pac. 527; 3 Wigmore 2813. As between conflicting presumptions, the one having the least probability to sustain it must yield; 18 R. C. L. 419;

Turner v. Williams, (Mass.) 24 L. R. A. N. S. 1201; Neeley v. Ry. Co., (Ga.) 89 S. E. 325. If petitioner had been found to be the widow of Kiesel, the stepchildren would be entitled to one-half interest; Hayach v. Will, 169 Ill. 145; 29 C J 995. The verdict and judgment should be sustained.

BLUME, Justice.

Charles J. Kiesel died intestate in Fremont County, Wyoming, on November 7, 1922. Effie P. Kiesel, hereinafter referred to as the petitioner, claiming to be the surviving widow of the deceased, was appointed administratrix of the estate on November 14, 1922. She duly qualified, filed inventories and on November 21, 1922, filed her second petition to set aside the homestead and all other property of the estate to her, alleging the value of all of said property to be $2200. No children were born to said Charles J. Kiesel and Effie P. Kiesel, but the former left surviving him two daughters, Thelma and Lucile, sixteen and twelve years old respectively at the time of the death of said deceased. Guardians were appointed for the two minors, who appeared and answered the petition of Effie P. Kiesel aforesaid, denying that the petitioner was the surviving widow of the deceased, on the ground, as disclosed upon the trial, that petitioner was, at the time of her marriage to the deceased, married to one Joseph Sebel, and for that reason was not qualified to marry the deceased. That claim was denied by petitioner. Upon demand, a jury was impaneled to try the case. A verdict was returned against the petitioner and in favor of said guardians. Judgment was duly entered upon the verdict, and from this judgment the petitioner has appealed.

139 errors are assigned herein. It is, of course, impossible, to mention, let alone discuss, them all. Some of them relate to proceedings in said estate prior to the filing of the petition herein, or not related thereto, and have nothing to do with this case, and are not before us for

review. Others relate to immaterial matters, which could not possibly have any determinative effect herein. We have carefully gone over them all, but in order to confine this opinion within reasonable limits, we shall discuss only such of them as we think of sufficient importance to serve as a guidance in future cases.

1.  The guardians took the depositions of Dr. Lowry and Mrs. Challen at Excelsior Springs, Missouri, on May 31, 1924. Notice of the taking of such depositions on that date and at said place was duly served upon counsel for petitioner on May 26, 1924. It is claimed that this notice gave insufficient time. Section 5839, W. C. S. 1920, provides that "the notice shall be served so as to allow the adverse party sufficient time exclusive of Sundays, the day of service, and one day of preparation, to travel by the usual routes and modes of conveyance to the place named in the notice." No Sunday intervened between the dates specified in the notice. Counsel argues that because a holiday intervened, that date should be excluded. But the statute does not exclude it. Counsel further argues that neither he nor his client could be compelled to travel at night, and hence the time given was insufficient. But nights are not excluded by the statute. The argument would have had weight in the days when travel was mainly by stage coach, but we do not think that it has any application at the present time. Further, there is nothing in the record to show that petitioner or her counsel would not have had sufficient time to reach the place of taking the depositions, excluding the time directed to be excluded by the statute, and in the absence of such showing, we have nothing before us to indicate that the time given was not ample. See 18 C. J. 668.

2.  Counsel for the petitioner seems to take the position that the minor children had no right to appear in this proceeding and resist the claim of the petitioner. We can see

no force in the argument. Sections 6879 and 6880, W. C. S. 1920, provide for the procedure under which a homestead and other property may be set aside to a widow of a decedent. A petition asking therefor must be filed, a notice must be given to all interested parties and a hearing must be had. The statute, accordingly, necessarily contemplates that the parties notified are entitled to be heard and to resist the claim made in the petition.

3. It is also assigned as error that the court submitted the case to the jury. Section 6740, W. C. S. 1920, which is a portion of the provisions relating to probate proceedings, provides in part as follows:

"If no jury is demanded, the court must try the issues joined. If, on written demand, a jury is called for by either party, one shall be had as in other civil cases," etc.

A jury was duly demanded in the case at bar in accordance with the foregoing provision. It has been held under a similar statute in California that no jury could be demanded as a matter of right in connection with the settlement of accounts. Estate of Moore, 72 Cal. 335; 13 Pac. 880; Estate of Sanderson, 74 Cal. 199, 15 Pac. 753. But in Estate of Sheid, 122 Cal. 528, 55 Pac. 328, it was held that the issue of heirship was properly submitted to a jury. In re Baird's Estate, 173 Cal. 617, 160 Pac. 1078, the question was discussed at length, and the court held that the issues of fact in a case for partial distribution of an estate were properly submitted to the jury. The case at bar is, in principle, similar to the two cases last cited, and we do not think that the court committed any error in granting the demand for a jury.

4. A number of assignments of error are, in effect, directed at the point that the evidence in the case was insufficient to warrant the jury in finding against petitioner. That is, as we view it, the most important point in the

case. The evidence tends to show the following facts: Petitioner was married to one W. H. Eickemeyer at Quincy, Illinois, in the year 1904 or 1905, and was divorced from him by a decree of the Circuit Court of Winnebago County, Illinois, on March 18, 1914, the decree providing that the parties should not remarry within a year. She had been separated from her husband since at least the year 1912, and from that year on to and including part of 1920, she was in Kansas City, Missouri, at least a considerable portion of the time. Dr. Lowry testified that he met the petitioner at Excelsior Springs, Missouri, in September, 1919, under the name of Mrs. Joseph Sebel; that she told him that she was living in Kansas City, with her husband Joseph Sebel, who was or had been a saloon man; that he, the witness, met Joseph Sebel, husband of petitioner, and was introduced to him by a Mr. Page, who acted as attorney for Joseph Sebel, and that the medical bill which he, the witness, had against the petitioner was paid by Mr. Page. Mrs. Challen testified that she met the petitioner at Excelsior Springs, Missouri, in September, 1919, and attended upon the latter as a nurse at a hospital, to which petitioner had been sent by Dr. Lowry; that upon arrival at the hospital, petitioner was in a dazed condition, as a result of what appeared like a gun-shot wound; that petitioner stated to witness that her name was Mrs. Joseph Sebel; that her husband's name was Joseph Sebel; that she and her husband were keeping house in Kansas City, Missouri; that the gun-shot wound had been inflicted upon her by her husband, and that she, Mrs. Sebel, intended to commence divorce proceedings against her husband. There was introduced in evidence a petition for divorce filed in the Circuit Court at Kansas City, Missouri, on September 2, 1920, entitled Effie Sebel vs. Joseph Sebel. The petition states in substance as follows: "Plaintiff states that on or about the ——— day of ——————— 1912, she and defendant became husband

and wife in Kansas City, Missouri; that from said date plaintiff continued to live with defendant as his wife until August 19, 1920; that during all that time plaintiff faithfully demeaned herself and discharged all her duties as the wife of defendant; that defendant has been guilty of cruel conduct, shooting plaintiff with a pistol in the summer of 1919; stabbing plaintiff with a knife in the summer of 1918, and compelling plaintiff to leave him.'' A divorce from the defendant was accordingly prayed. The petition purports to be sworn to by Mrs. Effie Sebel, and the signature of that name thereon was stated by experts, who testified in this case, to be that of the petitioner herein. The petition was evidently never acted on, for the testimony shows that no divorce was ever granted, dissolving any marriage between petitioner and Joseph Sebel, if such marriage existed.

Petitioner met the decedent in October, 1921, and was married to him on December 29, 1921, under the name of Effie Mullins, her maiden name. They settled at Lander, Wyoming. A number of witnesses testified to conversations with petitioner. Mrs. Ranny testified in brief as follows:

I had conversations with petitioner in the summer of 1922. She referred a number of times to her marriage with Joseph Sebel; that a baby had been born of this marriage, but that it had died at birth because of her husband's drunken condition; that Sebel died, and that she had had her picture taken at Sebel's grave, and also wanted her picture taken at Kiesel's grave.

Mrs. Yokum testified in brief as follows:

I had a number of conversations with petitioner. She said she had been married about ten or twelve years to Joe Sebel; that she lived with him at Kansas City; that she had a baby boy who died when about a year old; that she hadn't been living with Joe Sebel for about three years before he died; that he died at Sulphur Springs,

near Kansas City; that petitioner—speaking with witness about a telegram that petitioner received from Joseph Sebel after Kiesel's death—explained the telegram by saying that it was from a nephew of Joseph Sebel, and stated that Joseph Sebel was dead, and "the dead don't talk."

Mrs. Broderick testified to a number of conversations with petitioner, in brief as follows:

Petitioner spoke of her husband as being a drinker; that his name was Joseph Sebel; that they lived at Kansas City; that her husband ran a saloon; that they had a little baby, which died; that her husband, Joseh Sebel, had died. He is the only man she mentioned as having been her husband.

Thelma Kiesel testified on this point in brief as follows:

Petitioner told me that she had been married to Joseph Sebel; that they lived at Kansas City; at one time she said that he had been dead ten or twelve years, and at another time that he was living during the war; that she had a baby boy that died. She showed me pictures of her relatives. She had a kimona, which she said belonged to Joseph Sebel; she also constantly wore a ring which she said she had received from him. As to telegram which she received from Sebel after my father's death, she said that that was from Sebel's nephew.

The petitioner, in attempting to explain the picture that was taken of her at "Sebel's grave," introduced a photograph of herself taken beside a tombstone containing the name of "Janko Sebel," and explained that it was taken at that particular place accidentally on a Decoration Day.

Joseph Sebel was not in fact dead, but appeared as a witness at the trial on behalf of the petitioner, denying that he had ever been married to the petitioner, or that he had lived with her. He stayed, as the testimony shows, at the house of the petitioner for about a month immediately prior to the trial at Lander. The petitioner herself

also denied that she had been married to Sebel or had lived with him, and denied generally all conversations. about Joseph Sebel mentioned by the various witnesses.

Counsel for the petitioner contends that under this testimony, given here in the briefest outline, the court should have instructed the jury to return a verdict in favor of the petitioner. We cannot concur in that contention. True, as counsel argues, when the marriage of petitioner to the deceased, on December 29, 1921, was shown, a strong presumption of the validity of this marriage arose. And the lower court fairly recognized that rule, and evidently intended to impress it thoroughly upon the minds. of the jury, for they were told in instruction 4 that upon such marriage being shown "the burden of evidence would be upon the guardians of the heirs to establish by clear and competent evidence that the petitioner was not competent to contract a legal marriage at the time the ceremony was performed at Casper, Wyoming." And again in instruction 8 the jury were told that the presumption aforesaid "will overcome all presumptions of any valid prior marriage existing at said date, and the burden of proof in such case is upon the guardians herein to prove by clear, convincing and satisfactory evidence, other than presumptions, that such marriage of Effie P. Kiesel and Charles J. Kiesel, now deceased, was invalid." But counsel for petitioner argues this case as though such presumption, strong though it is, is conclusive, which it is. not, but may be overcome by any competent evidence. And he is in error in thinking that the only way in which such presumption may be overcome is by showing either a previous ceremonial marriage, followed by co-habitation or a common-law marriage by reputation and co-habitation. Most of the testimony in this case, showing the existence of a marriage between petitioner and Joseph Sebel, consists of declarations. The importance and effect of such declarations depends upon their character and the

circumstances under which they are made, and may, at times, be alone sufficient, in a civil case, to prove a marriage. Wigmore on Evidence, sec. 2083 (vol. 4, p. 448) says:

"In civil cases in general, just as habit and repute may suffice, so also the opponent's admissions of the marriage are unquestionably sufficient, so far as any rule of law is concerned."

See cases cited by the author.

In the case of Greenawalt v. McEnelly, 85 Pa. 352, 357, the court said:

"The admissions by the parties of their marriage is in the nature of direct proof, and is certainly competent evidence of the fact. When such admission is made under circumstances that show it to be against interest, it is evidence against the person making it with the same force and effect as any other admission against interest. This has been held so in criminal cases. On the trial of an indictment for polygamy or adultery, the prisoner's deliberate admission of his marriage to the alleged wife is admissible as sufficient evidence of the marriage. 2 Greenl Ev. sec. 461 and authorities cited in note. So in action for criminal conversation. Forney vs. Hallacher, 8 S. & R. 159."

See to the same effect 38 C. J. 1336, 1338; Coleman v. James, 67 Okla. 112; 169 Pac. 1064; Eldred v. Eldred, 97 Va. 606, 34 S. E. 477.

In the case of State v. Moore, 36 Utah 521, 105 Pac. 293; Ann. Cas. 1912A 284, it is held that in a prosecution for adultery, voluntary and unequivocal statements of the accused that she is the wife of a certain person are sufficient to prove the fact of marriage. The case is annotated, as to the sufficiency of such declarations to establish

a marriage, at page 288 of Ann. Cas. 1912A, and a number of cases are cited in which the same rule is declared as in the Utah case. Only two cases are referred to as having held the contrary doctrine. Courts have generally been much more strict in criminal cases than in civil cases, and if they, or some of them, go to the length of holding such declarations sufficient to establish a marriage in the former cases, we cannot be expected to hold a contrary rule in a civil case like that at bar. The effect of such declarations, as heretofore stated, depends upon their general character and the circumstances under which they are made. 38 C. J. 1337. Thus in the case of Hunter v. Milam, 5 Cal. Unr. 107, 41 Pac. 332, it was held that a sworn complaint in a suit for divorce by a woman against her first husband, is, in the absence of explanation, conclusive of the fact of her marriage to him in a suit by her second husband for annulment. We have such sworn complaint in the case at bar; we further have petitioner's many declarations, made to Dr. Lowry and Mrs. Challen in Missouri, and to persons in Lander. These admissions, statements and declarations, together with the facts and circumstances otherwise shown, as for instance that petitioner had her photograph taken near the "Sebel" tombstone, and the fact that Joseph Sebel tarried at her house for a month previous to the trial of this case, were sufficient to warrant the submission of the question of her marriage to Sebel to the jury. The jury did not find and were not asked to find whether the marriage of petitioner to Sebel, found by them to have existed, was a ceremonial or a common-law marriage. Nor did the declarations and admissions of the petitioner indicate whether the marriage was the one or the other. It is claimed that the counsel for the guardians in the opening statement to the jury relied upon a common-law marriage commenced in 1912. The record, however, shows the contrary. If counsel for the guardians made the statement claimed, which is de-

nied by them, it could not be binding and could not prevent them from changing their theory later in the trial. The facts are that, ultimately in the trial of the case, counsel for the guardians simply took the broad position that the testimony in the case showed a marriage without attempting to say whether that was a common law or a ceremonial marriage. Be that, however, as it may, the record shows that a common-law marriage was recognized in the state of Missouri, where the parties lived, until at least the year 1921. Platner v. Platner, 116 Mo. App. 405, 91 S. W. 458; Sess. Law Missouri, 1921, p. 468, amending sec. 7302, Rev. St. 1919 of that state. The question, therefore, whether the marriage was of one kind or the other, is of no importance, except as it may have a bearing on the next point to be considered.

5.   The court gave to the jury the following instruction, numbered 6:

"You are instructed that if you find that the second marriage of the petitioner, as claimed by the guardians, was originally void because she had then living a husband by a marriage which was undissolved, a subsequent marriage entered into in good faith without any knowledge of any impediment would be presumed to have occurred if the parties continued to cohabit together after the removal of the disability."

Counsel for the petitioner complains of this instruction, and claims that the presumption therein mentioned is inconsistent and in conflict with the presumption of the validity of the marriage of petitioner and the decedent, and should not have been given. It is said in Wigmore on Evidence, sec. 2493 (2nd ed.) that strictly speaking there are no conflicting presumptions. In order to clarify this situation, and put the above instruction in its proper setting, it is best, perhaps, to separate the proof herein into

its logically component parts, and to consider the shifting of the burden to produce further evidence at the various stages in the case. The burden of proving her marriage with the deceased was on the petitioner. 38 C. J. 1321. While there is no evidence that the person who performed the marriage ceremony was in fact a person authorized to perform it, we shall assume that the ceremony was legal, and that the petitioner sustained this burden resting upon her. A strong presumption of the validity of that marriage thereupon arose. See Jones, Ev., sec. 86. It accordingly devolved upon the guardians, who attacked this marriage on the ground of a prior existing marriage with Sebel, to overcome this prima facie case made by petitioner, and to prove such marriage with Sebel and that it was not legally dissolved. 38 C. J. 1321, 1329. The record shows, without contradiction, that such marriage with Sebel, if it existed, was never legally dissolved, and, as we have stated, the solemn statement made by petitioner under oath as to the existence of such marriage, and her other declarations and the circumstances shown were sufficient, so far as the law was required to be satisfied, to make a prima facie case for the guardians and overthrow the presumption in favor of the marriage with Kiesel; that is to say, the evidence was sufficient to leave that question for the jury to decide, and they decided against the petitioner. The petitioner, accordingly, had to produce proof to overthrow the prima facie case made by the guardians. Now the only proof produced in that connection (aside from the denials of the interested parties) was the testimony that petitioner was married to Eickemeyer, and was not divorced from him until 1914. This proof showed that petitioner and Sebel could not have been lawfully married in 1912, as stated in the petition for divorce filed by petitioner in Missouri. But the date of the marriage, as alleged in that petition, was an unimportant part thereof; the petitioner might have been mistaken as to

that, and the jury were not compelled, we think, to accept that date, particularly in view of the fact that Sebel himself testified that he did not know the petitioner until 1914 or thereafter. And whatever probative force the foregoing proof might have had as to any marriage with Sebel after the divorce in Illinois, we cannot say as a matter of law that the prima facie case made by the guardians was overcome.

Now it is apparent that instruction No. 6, given by the court as above stated, could not come into the case, and would have nothing to do with it, unless the jury believed —and we cannot tell whether they did or not—that petitioner and Sebel were married in 1912, and further believed—and we have no way to tell that—that no ceremonial marriage was entered into between them after petitioner was properly divorced from Eickenmeyer. Hence it is clear that the instruction was at best, so far as the record before us shows, but of minor importance in the case, if of any importance at all. In so far as it assumed or intimated that the question of the marriage of petitioner to Sebel in 1912 was in the case, it was in favor rather than against her. Counsel is clearly wrong in stating that there was no evidence of subsequent cohabitation upon which to base the instruction, for the admissions and declarations of petitioner are replete with statements of her cohabitation with Sebel. Further, the presumption mentioned in the instruction had no direct connection with the presumption in favor of the validity of the marriage between petitioner and Kiesel. It related to an entirely different step in the process of proof of the case, was simply aimed at weakening or overthrowing the prima facie case made by the guardians, and was confined to a single point, namely whether the marriage relation of Sebel and the petitioner, if commenced in 1912, continued thereafter by reason of cohabitation. In view of these facts, we need not, we think, determine whether or not the

instruction was absolutely correct as a matter of law, or what relation it bears to the rule that a meretricious beginning of cohabitation, if once shown, is presumed to continue. Counsel for petitioner asked the court to instruct on the latter point, but he did so in an asked instruction which was clearly wrong in other respects, particularly in stating that the guardians relied solely on a common-law marriage commenced in 1912. He does not discuss the rule stated in 8 Enc. of Ev., 452, 453, and embodied in the instruction given, to the effect that where a marriage has an unlawful beginning, and the disability is thereafter removed, a subsequent marriage will be presumed from continued cohabitation. See also Clark v. Clark, 44 Nev. 44, 189 Pac. 676, 194 Pac. 96, a strong case, generally sustaining that rule, and 38 C. J. 1342, where the authorities on both sides are collected. The statement of the rule in the instruction given was, perhaps, too loose. We can readily see that under some circumstances, and where the cohabitation continues for a long time, and takes place under circumstances indicating a marriage, an inference, or even a presumption may, perhaps, arise that a marriage, meretricious in the beginning, was contracted, after the removal of the disability. But as heretofore stated, we have no way to tell, whether the jury even considered the year 1912 as the commencement of the marriage between petitioner and Sebel. They evidently credited the testimony introduced by the guardians and their verdict is, in all probability, based on petitioner's statement under oath that she was married to him; her declarations to that effect to other parties; the fact that she got a telegram from Sebel immediately after the death of Kiesel; the fact that Sebel was at her house for a month previous to the trial at Lander; the fact that she wore a ring of Sebel's; the fact that she made numerous statements that Sebel was dead, when as a matter of fact he was alive; and the other circumstances shown in the case.

In view of this, and in view of the further fact that the court in two instructions told the jury that the presumption of the marriage to Kiesel must be overcome by clear and convincing evidence, we feel satisfied that the petitioner was not prejudiced by whatever error there was, if any, in connection with the matters just discussed.

6. We feel that we should not leave unnoticed another point in the case. Thelma Kiesel, daughter of the decedent, was asked how she came to leave home. Objection was made to the question, and the objection overruled, the court saying "I will see what evidence you have," indicating that improper evidence might be struck out on motion. The question, while improper, was, or might have been, entirely harmless. The witness answered that petitioner was drunk, threatened her life, and that she, the witness, had to leave. No motion to strike the testimony was made. Later petitioner, while on the witness stand, was asked: "You weren't drunk at that time, or any other time near that time?" The only objection made was that no proper foundation had been laid, and the witness emphatically denied having been drunk at any time. Later Thelma Kiesel again was asked what condition the petitioner was in on the occasion mentioned, and the only objection made was that this matter had been gone into in her examination in chief. One Broderick also testified to petitioner's condition at that time, and stated that she was "dead drunk," and was permitted to give this testimony without any objection whatever. Counsel for the guardians referred to this testimony in his argument to the jury.

Counsel for the petitioner now complains of this testimony, claiming that it was wholly irrelevant and could subserve no other purpose than to prejudice the jury. We think he is entirely right. The testimony could not possibly have a tendency to prove whether or not the petitioner was the wife of Joseph Sebel on December 29, 1921,

when she married the decedent, and that was the only issue in the case. There was no justification whatever for injecting this testimony into the case, and we think we may assume that the court, on proper objections or motions to strike, would have promptly excluded it. It would seem, however, that counsel for the petitioner himself, at the trial of the case, considered such testimony as having a proper bearing in the case. At least the objections made at the trial do not indicate the contrary, and were not such as to justify or at least require the court to exclude the testimony. In fact the most emphatic testimony on this point, that of Mr. Broderick, was permitted to go into the record without any objection whatever. And while, in case of proper objections or motions, the admission of such testimony might, at times, require a reversal of a judgment on that ground alone, we do not feel warranted, in view of the condition of the record before us, to consider that point in this case.

We have examined each of the assignments of error herein, but believe that the issue in the case was fairly submitted to the jury, and that the record does not contain any prejudicial error that would warrant us to set the judgment aside. The judgment of the lower court is accordingly affirmed.

*Affirmed.*

POTTER, C. J., and KIMBALL, J., concur.