## VANN v. VANN.

### 96 P. 2d 76.

No. 28870.  Nov. 14, 1939.

Kenneth Reed and T. Jean Reed, both of Perry, for plaintiff in error.

H. A. Johnson, of Perry, for defendant in error.

RILEY, J. This is an appeal from a judgment declaring defendant in error, herein referred to as plaintiff, to be the surviving widow and heir at law of George G. Vann, deceased. George Vann died intestate on September 3, 1936. George Dolezal was appointed administrator of his estate. He filed his final account and petition for distribution. Thereupon plaintiff filed her petition in the county court praying that she be declared an heir of George G. Vann. Her claim is that she was the surviving widow of said deceased. Her petition was denied in the county court, and she appealed to the district court, where the matter was heard de novo, resulting in a judgment in her favor, from which judgment this appeal is prosecuted.

It appears from the record that plaintiff and George G. Vann, now deceased, were married in 1929. Of said marriage one child, Franklin John Vann, plaintiff in error, was born.

On February 14, 1930, plaintiff was granted a divorce and the care and custody of said minor child. Some kind of a property settlement appears to have been entered into prior to the decree of divorce.

The claim of plaintiff is that on or about February 17, 1930, she and deceased mutually agreed by oral agreement to again become husband and wife, and that they did actually live together as husband and wife from that time until his death.

The findings and judgment of the trial court sustain this claim.

The principal contention is that the judgment of the trial court is not sustained by the evidence.

Plaintiff relies upon what is referred

to as a "common-law" marriage subsequent to the decree of divorce.

The general rule is that, subject to the rules governing admissibility of unsworn statements and admissions generally, if a party to an alleged marriage has admitted or otherwise declared that the marriage exists, such admission or declaration is available as evidence of the marriage. 38 C. J. 1336.

There is abundant evidence in the record of admissions of George G. Vann, after the divorce, that he and Margaret Vann had resumed the marital relation and were living together as husband and wife. B. S. Silvers, father of Mrs. Vann, testified in substance that shortly after the divorce was granted, Margaret was living at his home; that Mr. Vann came there on at least two occasions and the witness protested against Vann's presence after the divorce and that Vann told him that he and Mrs. Vann "had made up to live together as man and wife"; that thereafter he, Silvers, made no further objections, and thereafter Vann and Mrs. Vann continued to live together as husband and wife up to the date of Vann's death; that Mrs. Vann was present when Vann made the statements, and that she assented thereto; that about one month thereafter, as soon as Mrs. Vann could get possession of her house in Perry, Mrs. Vann moved there and started living with Mr. Vann at that place.

A number of witnesses testified that on different occasions Mr. Vann had stated to them or in their presence that Mrs. Vann was his wife.

Dr. Driver was called as a witness, but he was not at the time available. It was thereupon stipulated that if present he would testify that sometime during 1935, George G. Vann brought Margaret E. Vann to his office in Perry and introduced her as his wife, and requested Dr. Driver to take charge of her case; that he treated the patient and Mr. Vann paid the bill. All the above is direct evidence of marriage. Coleman v. James et al., 67 Okla. 112, 169 P. 1064. There is also testimony of several witnesses to the effect that Mr. Vann had told them or stated in their presence, after the divorce, that he was a single man. There is also evidence that during said time he executed numerous written instruments affecting real estate, wherein he was described as "single," "a widower," or "divorced." The evidence is in conflict as to the contract, and like all questions of fact, the decision must turn on the weight of the evidence. Plaintiff in error asserts that the trial court stated that in measuring the weight of the evidence he had followed the rule in Coleman v. James, supra, that:

"The admissions of a party of the fact of his marriage are against his interest, and when made under circumstances of deliberation are entitled to great weight. Denials, on the contrary, being declarations in his own interest, are entitled to little weight in opposition thereto."

Plaintiff asserts that the record does not support the assertion that the trial court made such a statement. We do not find it in the record, but if made, the court was following the general rule.

The rule is stated in 38 C. J. 1337, as follows:

"Admissions of a party in confirmation of the marriage are entitled to more weight than denials, and admissions or declarations made with deliberation and under circumstances bespeaking veracity are of great probative value."

It is asserted that the admissions proven were not shown to have been made with deliberation and under circumstances bespeaking veracity, so as to entitle them to great probative value, or even of greater value than were the proven denials. Some of these statements do appear to have been but casual remarks, but others were apparently made under circumstances indicative of deliberation. When confronted with protests from the father of Mrs. Vann concerning his relations with the daughter after the divorce, Mr. Vann made strong declarations concerning the marriage. This is shown by the testimony of B. S. Silvers, heretofore mentioned. Amongst other things he testified:

"A. Well, he told me that he was not going to live up to the divorce at all, that they was going to continue to live together as man and wife. Q. Did he say anything about their both coming to that conclusion? A. Yes. Q. Was Mrs. Vann present when he was telling you that? A. Yes. Q. Did she give consent to that? A. Yes."

Aside from statements such as these, we have noted the stipulation concerning the statements made to Dr. Driver. It could hardly be said that statements, declarations, and admissions of this nature made in such circumstances are mere casual remarks and not intended to bespeak veracity.

It is next contended that cohabitation was not established. This contention cannot be sustained. Witness after witness testified to facts directly tending to prove that after the divorce Mr. and Mrs. Vann occupied the same house, and lived to all outward appearance as man and wife.

We deem it unnecessary to discuss in detail or set out even in substance the testimony of these witnesses. However, Mrs. Frank Taylor testified in part:

"Q. Were you acquainted with George G. Vann and Mrs. Vann here during George G. Vann's lifetime? A. Yes. Q. How long have you known them? A. Since 1930, I believe, '20 or '30. Q. Did you live in the same house with them? A. Yes. Q. How long? A. Well, that has been since 1935. * * * Q. And where was that place? A. On Sixth street. * * * Q. How long did you live in that house with them? A. About eight months. * * * Q. During the time that you lived there in the house with them, do you know whether Mr. Vann and Mrs. Vann here occupied the same bedroom together at night? A. They did."

It is true that there is evidence in the record tending to prove that Mr. Vann owned a farm some two miles southwest of Perry with a house fitted out for housekeeping such as a bachelor or single man would ordinarily have; that he spent considerable time and transacted much of his business there. But that fact would not conclusively show that he had no other home, or that he had not in fact occupied the house in town with Mrs. Vann in the relation of husband and wife. The question of cohabitation was also a question of fact to be determined by the evidence as a whole. The record justifies the conclusion reached.

It is contended that there is no evidence that at any time after the divorce Mr. and Mrs. Vann were generally reputed among their relatives and acquaintances as being husband and wife.

In this connection plaintiff in error cites Proctor et al. v. Foster, 107 Okla. 95, 230 P. 753; Davis et al. v. Reeder et al., 102 Okla. 106, 226 P. 880, and cases of a similar nature from other jurisdictions. These are cases where there appears to be no direct evidence of the marriage contract such as we have pointed out. They are cases where cohabitation and reputation alone were relied upon to prove the marriage. It is said such evidence does not constitute marriage, but only evidence tending to raise a presumption of marriage.

This court is committed to the rule that to constitute a valid common-law marriage it is necessary that there should be an actual and mutual agreement to enter into the matrimonial relation, permanent and exclusive of all others, between parties capable of making such a contract, consummated by their cohabitation as man and wife, or their mutual assumption openly of marital duties and obligations. Bothwell v. Way, 44 Okla. 555, 145 P. 350.

Our decisions have not required that there must be proof of the agreement, proof of cohabitation, and also proof of reputation tending to establish the status by presumption.

It may be noted that Bothwell et al. v. Way et al., supra, holds that the agreement or contract may be consummated in either of two ways, viz., by cohabitation as man and wife or their mutual assumption openly of marital duties and obligations.

In this case there is evidence tending to establish consummation of the marriage

contract. It is unnecessary to go further and prove reputation as to the marital status.

Finally, it is contended that the court erred in refusing in evidence a purported copy of a will said to have been prepared in June, 1930, for Mr. Vann.

There was evidence to the effect that Mr. Vann had executed the original instrument. The executed instrument was never found after the death of Mr. Vann. An attempt had been made in the county court to have the purported copy admitted to probate upon the theory that the original had been lost. Probate was denied in the county court, and this order became final. The trial court refused to admit the copy in evidence, not alone because the county court had refused its admission to probate, but also because there was no evidence in this case that Mr. Vann had permitted it to stand as his will until his death. The purported copy offered in evidence and rejected did not within itself indicate that Mr. Vann was at that time a single man. It made no mention of Mrs. Vann as his wife, or otherwise. The text of the instrument could throw no light on the question of whether Mr. Vann, at the time it was drawn, considered himself as single and unmarried. The county court having rejected the instrument as a copy of a "last will," the only plausible explanation for disappearance of the original will is that Mr. Vann had destroyed the original and repudiated it.

Coleman v. James, supra, is cited in support of the contention of error. Reference is to the quotation with approval from another case wherein it was said:

"Upon issue of marriage vel non declarations of alleged husband deceased that he was never married to alleged wife are admissible to disprove the alleged marriage and likewise his will, containing declarations to the same effect."

But in that case there was a will in existence at the date of the testator's death. In this case it was not shown that the will was in existence at the date of the death of the alleged testator, moreover as stated the purported copy did not contain a declaration that Vann was not at the time a married man. There was no error in refusing to admit the copy in evidence.

In Bothwell v. Way, supra, it is held:

"And in an action where it is necessary to determine the issue whether such actual agreement was entered into and whether there was a matrimonial relation maintained between them, permanent and exclusive of all others, or whether they maintained a continual living together as man and wife, or openly assumed mutual duties and obligations towards each other as man and wife, and where there is conflict in the testimony as to facts which go to show whether or not the parties actually maintained those marital duties and obligations required by the common law, the judgment of the trial court upon such facts will be given the effect of a verdict of a jury upon conflicting testimony, and, if reasonably supported by the evidence, will not be disturbed in this court."

After a careful review of the record, and without further consideration of the applicability of the law rule apparently used in the last-cited case, we are drawn to the conclusion that the judgment of the trial court is not clearly against the weight of the evidence, and the same is affirmed.

BAYLESS, C. J., and CORN, HURST, and DANNER, JJ., concur.