## MURRAY
v.
## BORG COMPRESSED STEEL CO. et al.
### No. 35845.

Supreme Court of Oklahoma.

June 8, 1954.

Rosenstein & Fist, Tulsa, for plaintiff in error.

Rainey, Flynn, Breen & Anderson, Oklahoma City, Ungerman, Whitebook, Grabel & Ungerman, Tulsa, for defendants in error.

ARNOLD, Justice.

C. M. Murray brought this action in the Court of Common Pleas of Tulsa County against Borg Compressed Steel Company, a corporation, Mrs. Edith Dean, Mrs. Dessie Hatfield, Adam Klink, and Ernest Paris for damages for the conversion of a steel drilling derrick. Defendants separately cross-petitioned against plaintiff denying his ownership and asking for their respective attorney fees and costs.

A jury was waived by all parties and the cause was tried to the court.

The evidence is not in substantial conflict and is as follows:

Defendants Mrs. Hatfield and Mrs. Dean own a tract of land in Seminole County, Mrs. Dean owning all the surface and both Mrs. Hatfield and Mrs. Dean owning the mineral rights; in 1944 they leased the land for oil and gas mining purposes to Freeborn Engineering Company; said lessee moved a derrick and other drilling equipment on the land, drilled a well which was completed

as a dry hole in October, 1945, and thereafter moved all equipment off the lease, except the derrick, which was left standing, and abandoned the lease; the lease was formally released of record in April, 1947; the derrick in question, put on the land by Freeborn Engineering Company, was owned by plaintiff and was put on the land and used to drill the well without his consent; Murray found the derrick in 1946 and brought suit against Freeborn for possession of the derrick, obtaining judgment in his favor in November, 1946; in December, 1946, Mrs. Hatfield and Mrs. Dean leased the land for a period of 5 years to Earl Davis; in August, 1947, Freeborn dropped its appeal proceedings and settled the case which Murray had brought against it for possession of the derrick; Murray, knowing that Earl Davis had a lease on the land on which the derrick was standing, went to see Davis some time in August, 1947, and obtained permission from Davis to leave the derrick where it was; Davis told Murray he might drill a well on the land, and if so, he would make arrangements with Murray to use his derrick, but in any event, so far as his lease was concerned, Murray could leave the derrick where it was; Murray made no effort to see the landowners and obtain permission from them to leave the derrick there; Murray had occasion to drive by the land some two or three times a year and on such occasions would see the derrick while passing on the road by the land; some time during the fall of 1950 a grass fire swept over the land, burning the supports of the derrick and causing the derrick to lean at an angle of about 45 degrees, supported only by guy wires; Murray knew the derrick was in this condition but made no inspection of it other than to glance at it while passing on the road; some time in the spring of 1951 a high wind toppled the derrick to the ground, twisting and damaging it; it scattered over quite an area of ground; thereafter Murray passed by and saw that the derrick had fallen but did not inspect it; the landowners, Mrs. Dean and Mrs. Hatfield, who were sisters, asked Mrs. Hatfield's son, Mr. Johnson, to dispose of the derrick because it was a hazard and prevented about four acres of land from being cultivated; Johnson wrote to Freeborn Engineering Company, who, so far as the landowners knew, was the owner of the derrick, asking it to remove the derrick; Freeborn answered instructing them to dispose of the derrick in any way they chose; Johnson then asked Mr. Klink to sell the derrick as scrap; Klink advised defendant Paris, a licensed scrap dealer, about the derrick; Paris inspected it, made an offer for it which was transmitted to Mrs. Dean and Mrs. Hatfield which offer they accepted; Paris paid them $300 for the derrick as scrap, $100 going to Klink as compensation for his efforts in finding a buyer and $200 to the landowners; on July 7, 1951, Paris sent trucks to the land, cut up the derrick into lengths suitable for hauling, and the next day sold and delivered the scrap to Borg Compressed Steel Company in Tulsa; the sale was made over the phone and Borg bought the scrap sight-unseen; none of the defendants had ever heard of Murray or his claim of ownership of the derrick until just before he filed suit when his attorney made demand for return of the derrick or its value.

During the course of the trial plaintiff dismissed his action against Mrs. Dean. At the close of all the evidence the court rendered judgment for defendants on plaintiff's cause of action and against defendants on their respective cross-petitions. From order overruling motion for new trial plaintiff appeals.

Plaintiff's contention is that the evidence is insufficient to support the finding of the court and the judgment based thereon that plaintiff had abandoned the derrick and that defendants were not guilty of conversion thereof. In support of his contention he cites Kizziar v. Pierce, 204 Okl. 51, 226 P.2d 941, which case quotes with approval from 1 Am.Jur., Abandonment, Secs. 8 and 9, to the effect that the elements of abandonment are an intention to abandon and an external act whereby such intention is carried into effect, and that the intention is the paramount inquiry; that there must be some clear and unmistakable affirmative

act or series of acts indicating a purpose to repudiate ownership. In connection with this contention he asserts that there is no evidence showing any intention on the part of plaintiff to abandon the derrick; that the only things proved are lapse of time and non-user.

 The evidence is uncontradicted that Murray had known where the derrick was since 1946; that he obtained judgment for possession thereof in November, 1946; that he knew the lessee who took it on the premises had abandoned his lease and was no longer in possession; that he made no effort to obtain permission from the landowners to leave the derrick there; that at no time did he ever advise the landowners of his ownership of the derrick though he had occasion to pass the property several times each year; that he left the derrick uncared for and exposed to the elements for a period of five years; that he knew the derrick had been damaged by the grass fire and was in danger of falling but made no effort to preserve it; that he knew it had been blown down by a high wind and was twisted and mangled but did not inspect the damage or make any effort to conserve or repair the damage but left the derrick where it lay, a hazard to all who might have occasion to pass over the land and making that portion of the land on which it lay unusable for any purpose; that he did nothing whatever about the derrick until he saw that it had been removed, at which time he made demands for the derrick on the landowners; that he was a man experienced in the oil business; that he knew that it was not customary to leave a derrick on a lease which had been abandoned for so long a period; that he had no use for the derrick in his own operations. This evidence is sufficient to meet the test announced in American Jurisprudence relied on by plaintiff and cited above. The finding of the trial court that such series of acts indicated a purpose to repudiate ownership is supported by the evidence.

 In a suit for damages for conversion of personal property such as a derrick, jury having been waived, the court's finding and judgment based ·thereon will not be disturbed if there is any competent evidence reasonably tending to support it. Bullard v. Caulk, 206 Okl. 353, 243 P.2d 691.

Affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and DAVISON, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.