**Preston GADDIS, Appellant,**

v.

**CITY OF BARTLESVILLE, Oklahoma, an Oklahoma Municipal Corporation, Its Board of Commissioners, and The Washington County Election Board, Appellees.**

**No. 74218.**

Supreme Court of Oklahoma.

April 17, 1990.

Richard G. Harris, Bartlesville, for appellant.

Lee Slater, Okl. City, Okl. and Jerry M. Maddux, City Atty., Bartlesville, for appellee City of Bartlesville and its Council.

Craig D. Corgan, Dist. Atty., Dist. No. 11, Bartlesville, for appellee Washington County Election Bd.

LAVENDER, Justice:

This action was brought by Appellant, a registered voter of Appellee, the City of Bartlesville and Washington County, Oklahoma to invalidate an election authorizing the issuance of bonds to be used for building a new City library and demolition of the Bartlesville Civic Center and library to provide a site for the new facility.[1] The trial court upheld the validity of the election and denied Appellant all relief. Two related questions are raised as to the validity of the election. Initially, Appellant asserts the City, in submitting the proposition approved at the special election, improperly altered a question which had earlier been submitted to it by initiative petition. Secondly, he asserts the proposition voted upon impermissibly contained more than one question in violation of 11 O.S.1981, § 16–113. Lastly, Appellant claims the trial court violated 12 O.S.1981, § 611 by not rendering written findings of fact and conclusions of law *before* orally pronouncing its decision from the bench and in subsequently executing written findings and conclusions which had been requested from the City. We uphold the validity of the election and find no error in the manner in which the trial court issued its findings and conclusions. A chronology of events through the special election is necessary to understand the issues involved.

On April 18, 1988 the City Council of Bartlesville, based upon certain recommendations of the Civic Center Review Committee, voted to request the Bartlesville Area Chamber of Commerce to form a committee for the purpose of establishing a fund to be used to move the library to temporary quarters, demolish said library and the Bartlesville Civic Center, and for construction of a new library on the site of the demolished structure(s). On July 15, 1988 a document denominated an initiative petition was filed with the City Clerk of Bartlesville requesting the following resolution be submitted to the voters of Bartlesville:

Shall the following resolution be approved?

RESOLVED: The City of Bartlesville, Washington County, Oklahoma shall not demolish the Library and Bartlesville Civic Center until such time as the

---

1. On February 12, 1990, we entered an order staying demolition of any building involved in this case pending outcome of this appeal and mandate issuance or further order of this Court.

electorate, by majority vote, approve such action and the appropriation of funds necessary to utilize the property for the benefit of the people.

Exactly ninety (90) days later the initiative petition, with the requisite number of signatures, was filed with the City Clerk's Office.[2] It was accompanied by a proposed ballot title utilizing the identical language quoted above, except for deletion of the word RESOLVED, and the addition of boxes indicating a "yes" vote would be "for the proposition" and a "no" vote would be "against the proposition".[3] The petition was presented to the City Council and on February 6, 1989 Resolution No. 2494 was adopted in regard thereto. The Resolution provided as follows:

RESOLUTION GRANTING THE REQUEST CONTAINED IN AN INITIATIVE PETITION PERTAINING TO THE BARTLESVILLE CIVIC CENTER AND LIBRARY AND APPROPRIATION OF FUNDS NECESSARY TO UTILIZE THE PROPERTY FOR THE BENEFIT OF THE PEOPLE[.]

WHEREAS, the City of Bartlesville received on October 13, 1988, an initiative petition calling an election on questions concerning the demolition of the Bartlesville Civic Center and Library and the appropriation of funds necessary to utilize the property for the benefit of the people; and

WHEREAS, it has been and still is the intention of the Bartlesville City Council to submit to the voters appropriate question or questions concerning the demolition of said structures and appropriation of funds necessary for demolition and the construction of a new library; and

WHEREAS, it would be a waste of the taxpayers' funds to have an election on the question of whether such actions

should be submitted to the voters, when it is the intention of the City Council that said question should be submitted to the voters.

NOW THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF BARTLESVILLE, OKLAHOMA:

1. The Bartlesville City Council hereby grants the request contained in said initiative petition.

2. The Bartlesville City Council hereby agrees that the Bartlesville Civic Center and Library will not be demolished until such time as the electorate, by majority vote, has approved such action and the appropriation of funds necessary to utilize the property for the benefit of the people.

The next pertinent event to occur was on July 24, 1989 with the adoption by the Council of Resolution No. 2508 calling the special election of September 12, 1989 which is the subject of this proceeding. The text of the proposition submitted to the voters was as follows:

Shall the City of Bartlesville, in the State of Oklahoma, incur an indebtedness by issuing its bonds in the sum of two million five hundred thousand ($2,500,000.00) dollars to provide funds for the purpose of the construction, equipping and furnishing of a new library facility and the demolition of the Bartlesville Civic Center and library to provide a site for the new library facility, to be owned exclusively by said city; and levy and collect an annual tax, in addition to all other taxes, upon all the taxable property in said city sufficient to pay the interest on said bonds as it falls due, and also to constitute a sinking fund for the payment of the principal thereof when due, said bonds to bear interest not to exceed the rate of ten per centum (10%) per

---

2. 11 O.S.1981, § 15–103(C) requires signed copies of the petition to be filed with the city clerk within ninety (90) days after initial filing with the clerk. Section 15–103 is a part of the state statutory scheme governing the mechanics of municipal initiative and referendum questions found at 11 O.S.1981, §§ 15–101 et seq., as amended. For information purposes only we note Section 15–103(B) was amended slightly

effective November 1, 1988, but subsection A and C thereof remained unchanged.

3. Although there is no positive proof in the appellate record the petition contained the requisite number of signatures required by 11 O.S. 1981, § 15–103(B) noone disputes the petition in said regard and we assume for purposes of this opinion the number was sufficient.

annum, payable semi-annually, and to become due serially within ten (10) years from their date?

The measure was adopted by a vote of 5161 in favor of the proposition and 4061 against. Appellant next proceeded to file his action to invalidate the election and prohibit demolition. The only evidence submitted at the hearing before the trial court was by agreement of the parties and consisted of eight exhibits. These were: 1) the first page of the initiative petition; 2) Resolution No. 2494; 3) Resolution No. 2508; 4) a sample ballot used at the September election; 5) a certification by the Washington County Election Board of the election results; 6) the Amended Charter of Bartlesville; 7) a portion of the April 18, 1988 minutes of the City Council; and 8) the proposed ballot title submitted with the initiative petition on October 13, 1988. No testimonial evidence was presented. After oral argument the trial court announced his decision from the bench ruling Appellant's challenge to be without merit and upholding the validity of the election. Both sides were requested to present findings of fact and conclusions of law. Thereafter, the trial court approved, adopted and executed findings and conclusions submitted by the City.

In its findings and conclusions the trial court essentially held the initiative petition was outside the scope of the initiative power of the people because it embraced a *discretionary administrative act* (demolition of a city owned building) reserved to the Council, rather than a proposal for the enactment of any municipal ordinance or amendment to the city charter as required by the Oklahoma Constitution and laws of the State. It further determined that although the Council was not required to do so, because the initiative petition was found to be outside the scope of the initiative power, *it did adopt the resolution contained in the initiative petition when it adopted Resolution No. 2494.* The court further ruled the question submitted to the voters did not impermissibly contain more than one question, that the ballot title submitted contained congruent matters that were inextricably intertwined, as presented

it was neither deceptive or misleading and it provided the voters of Bartlesville a fair opportunity to express their will on the issue presented. Although as noted we believe the trial court was correct in upholding the validity of the election we deem it unnecessary for the purposes of this opinion to decide the question which it initially did concerning whether or not the initiative petition was outside the scope of the peoples' initiative perogative as will be explained below.

Initially, in support of the trial court's ruling the City argues the content of the initiative petition was outside the scope of the peoples' initiative perogative because it pertained to an administrative matter, rather than one involving a legislative matter (which the parties appear to concede would be within such power), that said petition proposed no ordinance or law because it did not purport to be a permanent rule or law for the conduct of government or business and, in effect, amounted to nothing more than a non-binding request on the part of the signatories. The City further argues Appellant's case is weakened by the fact the Council, even though not required to, adopted Resolution No. 2494 which adopted the petition and that the purpose of the petition was achieved by the election of September 12, 1989, i.e. obtaining approval of the voters of Bartlesville prior to demolition of the civic center and library and the appropriation of funding necessary to utilize the property for the benefit of the people.

Appellant counters that the petition did pertain to a legislative matter and that Resolution No. 2494, when passed by the Council, became an ordinance of the City, rather than merely a non-binding request of those voters that signed the initiative petition and by adoption of the resolution the Council was and still is required to submit to the voters *in a separate question*, without regard to funding the demolition or building a new library on the same site, *the question of whether or not the Bartlesville Civic Center and library should be demolished.* In other words, his

position is this latter question has never been before the voters in proper form.

In support of its argument that the initiative petition pertained merely to an administrative matter the City places heavy reliance on the case of *Hughes v. Bryan*, 425 P.2d 952 (Okla.1967). There we held an initiative petition which sought to prohibit the City of Edmond from approving any urban development renewal plan or project under the Urban Development Act of 1961, 11 O.S.1961, § 1701 et seq. (now 11 O.S. 1981, § 38–101 et seq., as amended) was outside the initiative perogative because it did not seek to propose the enactment of new legislation or the repeal of existing ordinances as ancillary to the enactment of new legislation, but instead sought to prohibit public officials from carrying out administrative duties enjoined upon them by existing ordinances. *Id.* at 954. Although *Hughes* and numerous other cases [4] not cited by the parties would seem to support its position in said regard we deem it unnecessary to reach this issue because we believe Appellant's stance in this case suffers from a more fundamental infirmity which we will detail.

■ The peoples' power of initiative and referendum in regard to municipal corporations is constitutionally anchored at OKLA. CONST. art. 18, § 4(a)–(e). 11 O.S.1981, § 15–101 et seq. is the statutory framework which contains the mechanics and procedures governing the initiative and referendum process. OKLA. CONST. art. 18, § 4(c) specifically governs an initiative petition which seeks the enactment of an ordinance, that which Appellant asserts was the object to be accomplished by the initiative petition at issue here. It provides as follows:

> When such petition demands the enactment of an ordinance or other legal act other than the grant, extension, or renewal of a franchise, *the chief executive officer shall present the same to the legislative body of such corporation at its next meeting, and unless the said petition shall be granted more than thirty days before the next election at which city officers are to be elected,* the chief executive officer shall submit the said ordinance or act so petitioned for, to the qualified electors at said election; and if a majority of said electors voting thereon shall vote for the same, it shall thereupon become in full force and effect. (emphasis added)

11 O.S.1981, § 15–108 contains comparable language when it provides: [5]

> When an initiative petition demands the enactment of an ordinance or resolution, *the mayor shall present the petition to the municipal legislative body at its next meeting. If the petition is not granted more than thirty (30) days before the next general municipal election,* the mayor shall submit the ordinance or act so petitioned to the reg-

---

**4.** *See e.g. Yarbrough v. Donaldson,* 67 Okl. 318, 170 P. 1165 (Okla.1918) (sale by city council of electric light plant pursuant to statute administrative matter not subject to referendum because city was merely administering a law already made); *Meder v. City of Oklahoma City,* 350 P.2d 916 (Okla.1960) (where city has authority by its charter to lease or otherwise dispose of its property city may lease its utilities without first having submitted the question to vote of the people, *absent charter provisions to the contrary* ). Although not necessary for our decision herein nor argued by the parties we note the Amended Charter of Bartlesville appears broad enough to encompass demolition of a City owned building. In Article 1, Section 4 of the charter the City is given the power "[T]o acquire property, by purchase or otherwise, necessary for the public good and own, hold, sell, lease, convey or otherwise dispose of any real or personal property within or outside the city limits."

In Section 5 of the same article the City is given the power "[T]o sell, lease, mortgage, hold, manage and control such property as its interests may require...." The charter of Bartlesville we have been provided does not require a vote of the people before the City may take actions managing or controlling its property. No attempt was made here by Appellant or the initiative petition at issue to amend these parts of the charter. *See In re Supreme Court Adjudication of Initiative Petitions in Norman,* 534 P.2d 3, 8 (Okla.1975) (upholding validity of initiative petition to amend charter so as to require submission to people and their approval by majority vote any ordinance increasing rates for utilities furnished by city before such an ordinance could be passed by legislative body).

**5.** Section 15–108 was amended effective November 1, 1988 in a manner not pertinent here. 11 O.S.Supp.1988, § 15–108.

istered voters of the municipality at the next general municipal election. (emphasis added)

As can seen from the clear and unambiguous wording of both the constitutional and statutory provisions, if the petition *is* granted by the municipal legislative body within the mandated time frame there is no requirement, constitutional or otherwise, to submit the ordinance or other legal act to the voters for approval. We believe one of the central purposes of the constitutional provision so providing is to afford the legislative body an opportunity to adopt the measure and, thus, obviate the need of holding a meaningless election in regard to a matter already adopted. *See Ex parte Griggs,* 63 Okl. 138, 163 P. 325 (Okla.1917) (Thacker, J. *concurring*). There we held the wording of the constitutional provision was plain, unambiguous and did not admit of interpretation and that an election conducted prior to such submission was invalid. *Id.* 163 P. at 326–327.

■ As we view the adoption of Resolution No. 2494 in regard to the initiative petition, whether it be asking for a permanent ordinance or merely a non-binding request of the signatories, the resolution *did adopt* the petition and the proposition submitted to the voters in September 1989 *did* submit to the voters of Bartlesville the issue(s) of demolition of the civic center and library and the appropriation of funding necessary to utilize the property for the benefit of the people.[6] This is exactly what was asked for by the plain wording of the initiative petition.

If the question proposed by the ballot title submitted to the Council with the ini-

tiative petition had been submitted to the voters we believe no more would have been accomplished and, in fact, as the Council recognized, a meaningless election would have been held. If the voters would have approved the initiative petition at an election, even assuming the content of the petition was a proper subject of the initiative perogative, *another election* would have been required anyway because the content of the initiative petition only asked whether the issue(s) of demolition and appropriation of funding for use of the property should be submitted to the voters *before* the Council acted in regard thereto. Thus, we believe there was no necessity to submit the proposition contained in the initiative petition to the voters because the Council, as it is authorized to do via OKLA. CONST. art. 18, § 4(c) and 11 O.S.1981, § 15–108, had already adopted it by approval of Resolution No. 2494 and a vote on that proposition was obviated by such approval.[7] The only question left then is whether the proposition as submitted improperly contained multiple questions in a single proposition.

In support of his argument the September 1989 proposition improperly contained multiple questions Appellant relies on 11 O.S.1981, § 16–113. This provision provides as follows:

The ballot for a special election shall be prepared by the secretary of the county election board and shall set forth the proposition or propositions to be voted upon, and if more than one proposition is submitted, they shall be arranged so that each proposition may be voted upon separately.

---

6. We note Resolution No. 2494, as required by both the constitutional and statutory provisions, was adopted by the Council more than thirty (30) days *before* the next election at which city officers were to be elected. The resolution was adopted on February 6, 1989. The next city officer election was held in Bartlesville on April 4, 1989. Bartlesville Examiner–Enterprise, April 3, 1989, at pg. 5; Bartlesville Examiner–Enterprise, April 5, 1989, at pg. 1.

7. Appellant attempts to argue in its appellate submissions that the doctrine of estoppel is somehow involved in this case by virtue of the City's adoption of Resolution No. 2494. This

was an issue not raised in the court below nor was it one raised in the petition in error or the amended petition in error. We, thus, need not consider it here. *See Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907, 912 (Okla.1982). Furthermore, we fail to see how anything in regard to the conduct of the City in passing Resolution No. 2494 or otherwise would subject it to the doctrine of estoppel nor do we believe Appellant proved, or for that matter, even attempted to prove estoppel in the trial court. The elements of estoppel are set forth in *Walker & Withrow, Inc. v. Haley,* 653 P.2d 191, 193 (Okla.1982).

City first argues § 16–113 does not apply by the force of 11 O.S.Supp.1988, § 16–102, which, with a proviso, excludes municipalities governed by charter from its ambit. Secondly, it argues even if it does apply § 16–113 provides only for the ministerial duty of the county election board secretary to print the ballots and only if more than one proposition is presented by the municipality involved is there any duty on the secretary to arrange the propositions so that each may be voted on separately. Because we decide the second position of City is correct we need not determine if the specific provisions of § 16–113 apply here. We assume they do.

 As we read § 16–113 it does not authorize an election board secretary *to draft* the proposition to be submitted to the voters. This is the function of the municipality submitting the question or questions. The secretary's function is to prepare, i.e. print *the ballot,* not to draft a ballot title or determine whether a municipality has erroneously submitted multiple questions in a single proposition. It is the municipality that submits the question or questions to the election board secretary. This is made clear in 11 O.S.1981, § 16–101(2) which provides the resolution of the municipality calling an election shall set forth, "[t]he offices to be filled or *the questions to be voted upon at the election.*" Only if more than one proposition is submitted by the municipality is the *election secretary duty bound* to see to it that each proposition submitted is arranged so that a separate vote may be had thereon. This ruling on our part does not end the matter, however. We must still determine if the proposition submitted improperly contained multiple questions. We believe it did not.

 Our starting place is a case decided over seventy (70) years ago by this Court. In *Turner v. Ramsey,* 63 Okl. 199, 163 P. 712 (Okla.1917) we were called upon to determine if a single ballot title improperly combined three issues. The issues submitted in the single proposition were, 1) that the compensation of each Lawton city commissioner be set at $100 per month; 2) that the term of office of each commissioner may be terminated at any time by amendment of the city charter; and 3) that the compensation for each commissioner may be increased or decreased at any time by amendment of the charter. *Id.* 163 P. at 713. It was argued in said case the ballot title embraced three distinct propositions so as to compel the voters to vote for or against all of them as a single proposition, and it did not allow a separate vote as to each one. In rejecting this challenge we said in part:

Any combination of cognate propositions, especially when united because of physical conditions or economic or other proper considerations, may be viewed as a single proposition; and it seems that a proposition may, without invalidating an election thereon, contain any number of elemental propositions and call for a single expression of the voters as to all of them, so long as these component propositions are congruous and fair to the electorate in such combination. *Id.* at 714.

The questions involved here, we believe, were congruous and Appellant simply has not proved there was anything unfair to the electorate in submitting them by virtue of a single proposition. The proposition submitted essentially contained three elements. These were construction of a new library, demolition of the civic center and library to provide a site for the new facility and a mechanism to fund the project. Obviously, the relationship between these elements is evident. Appellant asserts, however, it was unfair to so submit them. He argues it was unfair to those voters who were in favor of a new library, but against the demolition of the old structure(s) and, in essence, if the question of demolition would have been submitted separately the voters would have rejected it. Such arguments come much too late and are supported by much too little evidentiary support, if any.

We have held, in the absence of evidence to the contrary, a presumption arises as to

the regularity and validity of an election.[8] The burden of proving the invalidity of an election is on the contestant. It is his burden to show that the outcome of an election would have been substantially different, but for the claimed irregularity.[9] There is no such evidence in this record. The test in regard to ballot propositions has been stated by this Court as follows:

> Generally, the requirement concerning submission of ballot propositions is that the question not be deceptive or misleading, and that it be free from uncertainty and ambiguity. The test is whether the voters are afforded an opportunity fairly to express their will, and whether the question is sufficiently definite to apprise the voters with substantial accuracy as to what they are asked to approve.[10] (citations omitted)

We find the ballot title proposition involved here neither misleading or deceptive, ambiguous or uncertain on its face. Neither does it show facially the voters did not have an opportunity to fairly express their will. For us to now rule, based on the unsupported contentions of Appellant, a different result would have obtained had the matters been submitted separately or that the election is void would invade the peoples' will as expressed at the polls on September 12, 1989. We decline to so rule and, instead, uphold the validity of the election in the face of this post-election challenge.

■ One final matter is presented for our determination, Appellant's claim of error in the manner in which the trial court entered its findings of fact and conclusions of law. In such regard, Appellant does not question the adequacy of the findings and conclusions, i.e. that they sufficiently covered the issues in the case, but the fact the trial court did not issue them *prior* to its ruling from the bench *and* the fact they were adopted verbatim from those submitted by the City. We think these arguments are without merit.

The central purpose behind 12 O.S.1981, § 611 is that a non-prevailing party will be able to intelligently take exception to a trial court's ruling. We stated the purpose in an early case involving a predecessor statute [Rev.Laws Okla.Ann., Vol. II, Ch. 60, art. XX, § 5017 (1910)], identical in language to § 611:

> The object of the statute is to enable the parties to have placed on the record the facts upon which the rights litigated depend, as well as the conclusions of law which the court drew from the facts found, so that exception may be taken to the views of the trial court as to the law involved in the trial. (citations omitted) *Coleman v. James*, 67 Okl. 112, 169 P. 1064, 1067 (Okla.1917).

Appellant has not informed us how he was prejudiced by the trial court's action or that he was unable to intelligently raise any exception to the trial court's ruling against him. We certainly find no such prejudice based on the record before us. It is our view without such claim(s) of prejudice on his part it was not reversible error for the trial court to adopt the City's findings and conclusions after orally stating his decision from the bench. *See Ron Mead T.V. v. Legendary Homes, Inc.*, 746 P.2d 1163, 1165 (Okla.Ct.App.1987).

The decision of the trial court upholding the validity of the election is AFFIRMED. Our stay in regard to demolition of any structure(s) involved in this case is continued in effect until mandate issues or until further order of this Court.

OPALA, V.C.J., and HODGES, SIMMS, DOOLIN and ALMA WILSON, JJ., concur.

SUMMERS, J., concurs in result.

HARGRAVE, C.J. and KAUGER, J., concur in part, dissent in part.

---

**8.** *Arthur v. City of Stillwater,* 611 P.2d 637, 643 (Okla.1980).

**9.** *Quinn v. City of Tulsa,* 777 P.2d 1331, 1341 (Okla.1989).

**10.** *Arthur v. City of Stillwater,* note 8, *supra,* at 643.