Susan **WEAVEL, an individual and natural mother and personal representative of the estate of Shannon Eileen Weavel, a minor, deceased; and as natural mother and next of kin of Kelli Lauren Weavel, a minor, Appellee,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, a foreign insurance company, Jim Colbert Golf, Inc., a Nevada Corporation d/b/a Meadowbrook Country Club; and Joe Allen Patterson, an individual, Defendants,**

**and**

**Monte Weavel, an individual and natural father of Shannon Eileen Weavel, a minor, deceased; and as natural father of Kelli Lauren Weavel, a minor, Appellant.**

Nos. 78826, 78402.

Court of Appeals of Oklahoma,
Division No. 3.

Jan. 12, 1993.

**56**

Glenn R. Beustring, E. Diane Hinkle, Tulsa, and Margaret J. Lowery, Tulsa, for appellant.

Joseph R. Farris, Jody R. Nathan, Tulsa, and Robert S. Durbin, Tulsa, for appellee.

## OPINION

HANSEN, Vice Chief Judge:

In this wrongful death and personal injury action brought by Appellee Susan Weavel, Appellant Monte Weavel seeks review of the trial court's order distributing the recovery between himself and Susan Weavel, and seeks further review of intermediate and related trial court determinations. We affirm in part and reverse in part.

This matter arose out of an automobile accident on October 5, 1990, in which one of Appellant and Appellee's minor children, Shannon Eileen, was killed and their other child, Kelli Lauren, was injured. The children were at the time riding with their maternal grandmother, who was also killed. Neither Appellant nor Appellee was involved in the accident.

Defendant Patterson was the driver of the other automobile in the accident. Appellee alleged defendant Country Club had served intoxicating liquors to Patterson while he was intoxicated, resulting in the injury and death. The cause of action against the defendant insurance company is grounded in the underinsured coverage of the automobile in which the children were riding.

Appellant and Appellee were in the process of being divorced at the time of the accident. The petition in divorce was filed in May 1990, and the divorce was finalized on October 26, 1990. Appellee had been granted temporary custody of the children pending final decree.

On October 10, 1990, Appellee petitioned to be appointed personal representative of her daughter's estate.[1] On October 24, 1990, she filed this action. In May 1991, Appellant filed a civil action which substantially alleged the same claims against the

---

1. The petition was filed in the District Court for Tulsa County, Case No. P–90–910. Monte Weavel's appeal of Susan Weavel's appointment as personal representative was dismissed by the Supreme Court as untimely in appellate Case No. 78,922.

same defendants as are found in the present case.[2]

Appellee's Petition in this action was filed in her individual capacity, and as natural mother and next of kin of the children. In that initial pleading, Appellant was not expressly made a party to Appellee's civil action, either as an individual or a member of an interested class, and his damages were not specifically alleged.

However, Appellee was appointed personal representative of her daughter's estate on October 16, 1991. Upon Appellee's application of October 30, 1991, the trial court ordered Appellee, as personal representative and special administrator, substituted as the real party in interest in this action. This substitution effectively amended Appellee's Petition so that the suit was by the special representative. *Ferris v. Jones*, 78 Okla. 154, 189 P. 527 (1920).

■ A special representative is vested with complete control over a wrongful death action. *National Valve & Mfg. Co. v. Wright*, 205 Okla. 571, 240 P.2d 766 (1952). As special representative, Appellee completed negotiations of a compromise settlement with defendants. The settlement was approved by the trial court in a "friendly" suit, also on October 30, 1991.

In granting judgment pursuant to the settlement, the trial court found Appellee was acting individually, and as personal representative of the estate and heirs at law of Shannon Weavel, and directed that:

Said judgment, when paid, shall be distributed by this Court pursuant to Statute[3] in such proportion as this Court will determine after receiving appropriate evidence as to the division to be made.

After a hearing in November 1991, in which testimony was received from thirteen witnesses and considerable documentary evidence was introduced, the trial court ordered that Appellee receive ninety percent of the recovery and Appellant receive ten percent.

The order provided the distribution was to be made after the payment of legal expenses and costs of the action.[4] Costs were determined to be $16,322.64. Fees for Appellee's attorney were approved at forty percent of the total settlement pursuant to a contingent fee contract between Appellee and her attorneys. The trial court further ruled on various Appellant's and Appellee's motions. Appeal is from the trial court's apportionment order and associated rulings.

■ We will consider Appellant's allegations of trial court error as they are presented in his brief in chief. He first contends the trial court erred when it did not order distribution pursuant to 84 O.S.1981 § 213(B)(2)(b).[5] That subsection normally pertains in matters of intestate succession property distribution, but is implicitly incorporated by reference to prescribe distribu-

---

**2.** Monte Weavel's civil action was filed in the District Court for Tulsa County, Case No. CJ–91–2413. In a companion appeal, Case No. 78,402, we affirmed the trial court's order dismissing Monte Weavel's action. The dismissal was based upon the long standing rule in this state that limits wrongful death recovery to one action, with distribution of that recovery to each individual who sustained damages. See, 12 O.S. 1981 §§ 1053–55; *Shawnee Gas & Electric Co. v. Motesenbocker*, 41 Okla. 454, 138 P. 790 (1914).

**3.** 12 O.S.1981 § 1053, in relevant part, makes the following provisions for distribution:

B. The damages recoverable in actions for wrongful death ... shall include the following: Medical and burial expenses, which shall be distributed to person ... who paid these expenses, .... The grief and loss of companionship of the children and parents of the

decedent, which shall be distributed to them according to their grief and loss of companionship.
D. Where the recovery is to be distributed according to a person's pecuniary loss or loss of companionship, the judge shall determine the proper division.
E. The above-mentioned distributions shall be made after the payment of legal expenses and costs of the action.

**4.** Id. § 1053(E).

**5.** 84 O.S.1981 § 213(B)(2)(b) provides: 2. The share of the estate not passing to the surviving spouse or if there is no surviving spouse, the estate is to be distributed as follows:

b. if there is no surviving issue, *to the surviving parent or parents of the decedent in undivided equal shares,* ... (emphasis added).

tion of recovery for certain damages in 12 O.S.1981 § 1053.

More specifically, Appellant argues the judgment concluding the "friendly" suit on October 30, 1991, was final and precluded the later apportionment. In support of this argument Appellant cites *Adams v. Coleman,* 386 P.2d 1004 (Okla.1963).

In *Adams v. Coleman,* the administrator of the estate initiated a wrongful death action for the benefit of the heirs and next of kin, and recovered a judgment which did not apportion to the individual heirs. The Supreme Court held the judgment was final, applied the doctrine of *res adjudicata,* and ordered the proceeds to be distributed in the same manner as personal property.

However, the decision in *Adams v. Coleman* was based upon the administrator's failure to "submit the matter of apportionment until the judgment in a lump sum had been rendered". The record here reflects the matter of apportionment was submitted to the trial court by both Appellee and defendants, and was discussed by Appellant, before the judgment was entered at the "friendly" suit on October 30, 1991.

As we noted above in the quoted language from the October 30, 1991 judgment, the trial court expressly reserved the issue of apportionment. The was no such reservation in *Adams v. Coleman,* or in the other decisions cited by Appellant. We find the later apportionment was not precluded by the October 30, 1991 judgment against the defendants.

■ Appellant also argues the trial court's judgment of apportionment was invalid because it was outside the pleadings. The legal authority Appellant cites predates enactment of 12 O.S.Supp.1984 § 2015, part of the Oklahoma Pleading Code [6].

Section 2015(B) allows issues not raised by pleadings, but which are tried with the express or implied consent of the *parties,* to be treated as if they had been raised in the pleadings. While Appellant argues *he* did not consent to trial of the apportionment issue, he was not a party to the "friendly" suit, nor was there a need for him to have been a party because Appellee as personal representative had complete control over the case at that time. We find the trial court had jurisdiction over the apportionment issue.

■ Appellant next alleges the trial court erred in denying his motion to intervene in this case. Appellant asserts he should have been granted permissive intervention and provides no authority that he could intervene as a matter of right. A trial court's determination as to permissive intervention will not be reversed in the absence of abuse of the court's discretion. *Tulsa Rock Co. v. Williams,* 640 P.2d 530 (Okla.1982).

■ Appellant did not move to intervene until after Appellee had been appointed personal representative. At the hearing at which Appellee was appointed, Appellant, through counsel, acknowledged he approved the amount of the settlement with defendants and that the only issue remaining was pro rata division of the recovery. Appellant later signed a release of all defendants, and while he contends the release was conditional, the record only supports that Appellant preserved his right to an apportioned share.

Under those circumstances, we find no harm to Appellant's interests, even if we were to presume trial court abuse of discretion.[7] While he was not a designated party, Appellant was allowed to fully participate in all trial court determinations after the time he sought to intervene. His contention the trial court erred in not allowing him to intervene is without merit.

■ As his third briefed proposition, Appellant asserts he was denied due process when the trial court granted Appellee's motion to quash notice and subpoena for tak-

---

**6.** 12 O.S.Supp.1984 §§ 2001 *et seq.*

**7.** 12 O.S.1981 § 78 provides: The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.

ing Appellee's deposition. Again, presuming without deciding that the trial court erred, we perceive no harm to Appellant's substantial rights.[8]

Appellee moved to quash Appellant's notice and subpoena because Appellant, as a nonparty, had no right to depose Appellee. However, in her motion to quash, Appellee agreed to *voluntarily* appear for deposition. For reasons not apparent from the record, Appellant chose not to depose pursuant to her agreement. We decline to review an alleged error when Appellant failed to avail himself of the same opportunity he asserts he was denied.

■ We do, however, find merit in Appellant's allegation the trial court erred in failing to state findings of fact and conclusions of law. When there is a timely request, the trial court has a duty to make written findings and conclusions in accordance with 12 O.S.Supp.1991 § 611[9]. *Davis v. Gwaltney*, 291 P.2d 820 (Okla.1955).

Appellant made two requests for findings of fact and conclusions of law, the first of which requested facts to support the court's determinations relating to division of damages between compensatory and punitive, apportionment of recovery and fees for each of the parties' respective attorneys. Appellant filed a separate request with suggested findings and conclusions.

In its order of apportionment, the trial court expressly sustained Appellant's "motion for findings of facts and conclusions of law". In that order the court not only apportioned the recovery, but also found "the costs are $16,322.64 and the attorneys fees for [Appellee's] attorney are 40% of the total settlement". Even viewing the contents of the order most generously toward Appellee, we find virtually no findings of fact or conclusions of law in support of those determinations.

■ The trial court is bound to make findings of material fact in sufficient detail for a correct decision of questions of law involved in the case in the event the action is reviewed by a higher court. *Davis v. School Dist. No. D-14, Etc.*, 625 P.2d 630 (Okla.1981). The trial court here did not meet that standard.

■ Further, the object of § 611 is to enable the parties to take exception to the specific views of the trial court as to the facts upon which the rights litigated depend, and the conclusions drawn from those facts. *Messinger v. Messinger*, 341 P.2d 601 (Okla.1959).

■ Because the trial court's order of apportionment was issued by mail, and motions for new trial are not required to perfect an appeal[10], Appellant's first opportunity to take exception to the order was on appeal. Appellant was thus materially prejudiced in his ability to challenge the trial court's determinations. The trial court's failure to sufficiently support its determinations with findings of fact and conclusions of law is reversible error.

■ Appellant's fifth and sixth propositions take issue with Appellee's appointment as personal representative of her Shannon's estate. The appointment was made in a probate proceeding separate from the matter before us. That proceeding, and the appointment order, are final.[11] We have no jurisdiction to consider allegations of trial court error arising from Appellee's appointment.

Appellant next contends the trial court erred in awarding a forty percent attorney fee on the gross judgment. More specifically, Appellant argues Appellee's attorney did not represent his interests, therefore the fees for Appellee's attorney should have only been figured on Appellee's apportioned share of the recovery.

8. *Id.*

9. 12 O.S.Supp.1991 § 611 provides: Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its findings, except generally, .. unless one of the parties request it, .. in which case the court shall state in writing, the findings of fact found, separately from the conclusions of law.

10. See 12 O.S.1981 § 991(a).

11. See footnote 1 supra.

We need not now substantively consider Appellant's argument with regard to this proposition. The trial court's determination as to attorney fees is among those fatally unsupported by findings of fact and conclusions of law.

The Supreme Court has held an award of attorney fees should be based upon factors set out in our Rules of Professional Responsibility.[12] *Abel v. Tisdale,* 673 P.2d 836 (Okla.1983); Also see *State ex rel. Burk v. City of Oklahoma City,* 598 P.2d 659 (Okla.1979). Whether such an award is reasonable is a factual determination, and the contingent nature of the attorney-client contract does not preclude the trial court's responsibility to make a reasonableness determination.

Appellee cites *Abel v. Tisdale* in support of its argument that Appellant submitted no evidence on which the trial court could have relied to reduce the agreed contingent fee. However, *Burk v. City of Oklahoma City* at 663, imposes an affirmative burden on attorneys seeking compensation to "offer evidence as to the reasonable value for the services performed".

Although in *Abel v. Tisdale* the Supreme Court reversed the trial court's fee reduction, the attorneys seeking compensation there had presented evidence bearing on various factors in the Rules of Professional Responsibility. Here, the trial court not only failed to make findings of fact and state conclusions of law as requested, but we find little in our review of the record to support the trial court's attorney fee award. That deficiency must be resolved on remand.

■ Appellant further contends the trial court erred in approving costs of litigation based on a summary list of undocumented, and in some instances estimated, costs. Costs are authorized here by statute.[13] Costs must, however, be "necessary expenditures". *Hoffman v. Morgan,* 206 Okla. 567, 245 P.2d 67 (1952).

■ Appellee's costs were documented by an itemized list verified only by Appellee's identification of the document at the apportionment hearing. Appellee testified to no personal knowledge of the expenses, only that she thought "they were all incurred in prosecuting this lawsuit".

■ There were no receipts introduced in support of the expenses, nor did counsel who did have personal knowledge of the expenses, otherwise verify they were necessary. Additionally, two of the items of expense were listed as "estimated". The burden of proving entitlement to approval of costs is upon the movant. See, *R.J.B. Gas Pipeline Co. v. Colorado Interstate Gas Co.,* 813 P.2d 14 (Okla.App.1990). The trial court erred in approving Appellee's costs without sufficient and proper evidence of their necessity.

Further, one of the "estimated" items listed as a cost of Appellee's litigation is, in fact, attorney fees for counsel who were representing Appellee at the apportionment hearing. These were not the same counsel who had previously represented Appellee, and the fees requested as costs are additional to the 40% attorney fees which derive from Appellee's contingent fee contract with her initial counsel, and which were approved by the trial court.

■ Because the statutory language here[14] authorizes both "legal expenses" and "costs", we find no indication the Legislature intended to allow attorney fees as costs. Ordinarily, reference to costs in a statute does not include attorney fees. *Butcher v. McGinn,* 706 P.2d 878 (Okla.1985). It is, however, well settled that attorney fees are a permissible expense to be paid from the recovery in a wrongful death action. See, *Abel v. Tisdale,* 673 P.2d at 836.

If attorney fees are to be allowed in addition to those arising from Appellee's relationship with her initial counsel, the reasonableness of the additional award must also be established by evidence in the trial court.

---

**12.** 5 O.S.1981, Ch. 1, App. 3–A.

**13.** See footnote 3 supra.

**14.** See footnote 3 supra.

The trial court must also take evidence on remand to determine what costs and attorney fees may be allocated to Appellee's representation at the apportionment hearing. At that time Appellee was no longer acting in a representative capacity, but was in an adversarial position with Appellant. It would be improper to charge those expenses against the predistribution total recovery.

Finally, Appellant alleges the trial court erred in apportioning the recovery from the defendants ninety percent to Appellee and only ten percent to him. Appellant argues the apportionment was against the clear weight of the evidence and was an abuse of the trial court's discretion.

As with Appellant's contentions regarding attorney fees, we will not consider Appellant's substantive arguments because the trial court's determination on distribution of the recovery is unsupported by findings of fact and conclusions of law. In the absence of those requested findings and conclusions, Appellant is effectively constrained from "excepting" to the trial court's judgment, either before the trial court, or here on appeal.

The trial court's Order of Apportionment dated November 26, 1991, is REVERSED and this matter is REMANDED for an evidentiary hearing consistent with this opinion as to award of attorney fees and approval of costs, and for issuance of a new order of apportionment thereafter with appropriate supporting findings of fact and conclusions of law. The remainder of the trial court's determinations from which Appellant has sought this review are AFFIRMED.

AFFIRMED in part, REVERSED in part and REMANDED as instructed above for further proceedings consistent with this opinion.

BAILEY, P.J., and HUNTER, J., concur.