W. P. BISTRO TULSA v. HENRY REAL ESTATE
2022 OK CIV APP 24
514 P.3d 1091
Case Number: 119168
Decided: 10/19/2021
Mandate Issued: 06/22/2022
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2022 OK CIV APP 24, 514 P.3d 1091

 

W. P. BISTRO TULSA, LLC, Plaintiff/Appellee,
v.
HENRY REAL ESTATE, LLC, and TONY R. HENRY, Defendants/Appellants,
and
ALL NATURAL BURGERS OF TULSA #2, LEFTYS ON GREENWOOD, LLC, SUCCESS FOODS MANAGEMENT GROUP, LLC, PATRICK JOHNSON d/b/a EAST VILLAGE BOHEMIAN PIZZA, AMY MCMILLAN d/b/a EAST VILLAGE BOHEMIAN PIZZA, JOHN DOES 1-10, CURTIS RESTAURANT SUPPLY AND EQUIPMENT CO., JAMES E. BLACKETER, JR., AMERICAN BANK & TRUST CO., PENNY MAPLEWOOD INVESTMENTS, LLC, Defendants.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE JEFFERSON D. SELLERS, TRIAL JUDGE

AFFIRMED

James C. Hodges, JAMES C. HODGES, PC, Tulsa, Oklahoma, for Plaintiff/Appellee,

E. Kathleen Pence, PENCE LAW FIRM, PC, Jenks, Oklahoma, for Defendants/Appellants.

THOMAS E. PRINCE, JUDGE:

¶1 Henry Real Estate, LLC ("HRE") and Tony R. Henry ("Henry") (the "Appellants") appeal the trial court's September 26, 2020 Journal Entry of Judgment in favor of Appellee W. P. Bistro Tulsa, LLC, following a non-jury trial, on the claim of conversion, including the awards for damages, plus interest thereon, and for expenses in connection with the pursuit of the items Appellants converted. This Court holds that there is competent evidence to support the trial court's judgment in the amount of $105,923.75, jointly and severally, against both Appellants. Accordingly, the trial court's September 26, 2020 Journal Entry of Judgment is affirmed.

BACKGROUND

¶2 This dispute arose out of a series of transactions related to the opening, operation, and closure of several restaurants in a single restaurant space in Tulsa, Oklahoma. Appellee was formed in 2009 as a limited liability company and was subsequently licensed to operate a restaurant known as Wolfgang Puck Bistro. Appellee executed a sublease for commercial restaurant space with HRE. The restaurant, Wolfgang Puck Bistro, opened in July 2010 before closing in October 2013. A second restaurant, HopBunz, 'owned by Defendant All Natural Burgers of Tulsa #2 ("ANB"), operated in the space from October 2014 untill September 2016. In 2017, Torchy's Tacos (owned by Defendant Success Foods Management Group, LLC) opened and continues to operate today.

¶3 After the Appellee's concept failed, the space was subsequently leased by HRE to ANB. Concurrently, Henry, on behalf of the Appellee, negotiated the sale of furniture, fixtures, and equipment ("FF&E") and leasehold improvements located in the restaurant space to ANB. Under the approved terms of the sale from Appellee to ANB, Appellee took the purchase price partly in cash and partly in the form of a note, secured by a perfected lien on the FF&E and leasehold improvements. While ANB initially made payments on the note, HopBunz ultimately closed and ANB defaulted on the note.

¶4 Once HopBunz closed its doors, Henry began marketing the restaurant space to new tenants and, in March 2017, HRE granted a sublease to Torchy's Tacos. Once the Appellee learned of HRE's sublease with Torchy's Tacos, the Appellee began making efforts to find out whether its assets could be gathered and the collateral sold. In addition to making inquiries with Henry, Dr. James Rodgers ("Rodgers"), the Appellee's manager, hired Don Eller ("Eller"), an asset recovery specialist, to dissolve Appellee and "to assess [Appellee's] situation, investigate[,] and act on behalf of [Appellee's] failed enterprise." See Pl.'s Ex. 47 (Letter Memorializing Agreement Between Rodgers and Eller).

¶5 HRE's sublease with Torchy's Tacos incorporated various items affixed to the realty and also conferred upon Torchy's Tacos the right to renovate the space, including to demolish it. Although HopBunz had closed, it left in place all of the major FF&E and the leasehold improvements that, at least according to Jeremy Smith ("Smith"), Torchy's Tacos Senior Director of Design & Construction, made it "appear that the business had just closed down . . . without removing anything." See Aug. 27, 2020 Dep. Jeremy Smith at 7, lns. 6--7.Id. at 11, lns. 10--11. The record establishes that Henry then cleared the space by sale and other means.

¶6 On June 13, 2018, Appellee filed an action for indebtedness, foreclosure, conversion, and avoidance of fraudulent transfers against the Appellants and the above-named Defendants. In the Amended Petition, filed on December 4, 2018, the Appellee alleged, inter alia, that the Appellants and the above-named Defendants "committed conversion by knowingly and wrongfully transferring and disposing of some part or all of the FF&E . . . in complete disregard for the [Appellee's] ownership and/or its perfected security interest" (original emphasis omitted). Over the next several months, the Appellee dismissed claims and obtained judgments against other Defendants. On June 8, 2020, Appellants filed a motion for summary judgment under seal, which the trial court denied.

¶7 The Appellee's conversion claim against the Appellants came on for non-jury trial September 14--16, 2020. The trial court rendered judgment in favor of the Appellee on the conversion claim, finding that the Appellants were jointly and severally liable to the Appellee in the amount of $78,500.00, as the value of the collateral converted, interest in the amount of $17,073.75, plus the reasonable cost of recovery of the items converted in the amount of $10,350.00, for a total judgment of $105,923.75.

¶8 This timely appeal followed.

STANDARD OF REVIEW

¶9 When a motion for summary judgment is denied (as it was in this case) and a trial occurs, this Court will not inquire "into the correctness of the pretrial ruling" nor "review th[e] case on pretrial submissions alone" because the post-trial review of a motion for summary judgment is not reviewable on appeal. Myers v. Missouri Pacific Railroad Co., 2002 OK 6052 P.3d 1014Myers, 2002 OK 60id. ¶ 39.

¶10 This appeal also raises questions about the jurisdictional power of the trial court, including questions of standing, which this Court reviews under the de novo standard of review. Bank of America, NA v. Kabba, 2012 OK 23276 P.3d 1006

¶11 This appeal is taken from the judgment of the trial court in an action at law resolved via non-jury trial. In such cases, "the trial judge acts as the trier of fact[,] and those findings are entitled to the same weight and consideration that would be given to a jury's verdict." Hagen v. Independent School District No. I-004, 2007 OK 19157 P.3d 738Id. (citation omitted). Where the trial court's findings are supported by competent evidence, we must accept them. Id. Because the trial court is the finder of fact in non-jury trials, the trial court also determines issues of the credibility of witnesses and the weight of testimony "[b]ecause the trial court is in the best position to evaluate the demeanor of the witnesses and to gauge the credibility of the evidence." Stephens Production Co. v. Larsen, 2017 OK 36394 P.3d 1262

ANALYSIS

¶12 The Appellants present several propositions of error on appeal, but the overarching question before us is whether there is competent evidence to support the trial court's judgment in favor of the Appellee on the matter of conversion, including the awards for damages, plus interest thereon, and for expenses in connection with the pursuit of the items Appellants converted. This Court holds that there is competent evidence to support the trial court's judgment in favor of the Appellee in the amount of $105,923.75, jointly and severally, against both Appellants. Accordingly, we affirm the trial court's judgment in its entirety.

¶13 Appellants' appeal begins with a contention that the trial court erred when it failed to grant the Appellants' motion for summary judgment on the issue of standing. As we indicated above, when a motion for summary judgment is denied -- as it was in this case -- and a trial occurs, the post-trial review of a motion for summary judgment is not reviewable on appeal. Myers, 2002 OK 60See In re Doan, 1986 OK 15727 P.2d 574See Sept. 14, 2020 Tr. at 16, ln. 1. Although the record indicates that Appellants' counsel actually consented to Eller's designation as Appellee's representative at counsel table, we nevertheless hold that the trial court's acceptance of Eller's designation as Appellee's representative at counsel table fell within its discretion, and thus would have been proper even over Appellants' objection. After all, the designation of a representative to sit at counsel table is analogous to the choice given to organizations which, upon receipt of a notice of deposition, "shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on [their] behalf." 12 O.S. § 3230

¶14 Following its lengthy attack on the trial court's denial of its motion for summary judgment and decision to permit a non-member employee to sit at counsel table, Appellants proceed to raise several propositions of error regarding the sufficiency of the evidence to sustain the trial court's judgment. But under the deferential "any competent evidence standard" applicable to cases like this one, these arguments also fail. Indeed, in cases in which "the trial judge acts as the trier of fact," we must accept the trial court's findings "if those findings are supported by competent evidence." Hagen, 2007 OK 19Stephens Production Co., 2017 OK 36

¶15 First, Appellants contend that the trial court erred when it found that the Appellee did not abandon its claim to the property at issue. Appellants cite Murray v. Borg Compressed Steel Co., 1954 OK 182271 P.2d 731Murray, a drilling rig operator left an inoperable drilling derrick to languish in a pasture for five years, during which time the operator failed either to preserve the rig or to contact the owners. Id. ¶ 7. The Oklahoma Supreme Court held that the facts in that case were more than sufficient to meet the test for abandonment, described as "an intention to abandon and an external act whereby such intention is carried into effect, that the intention is the paramount inquiry; that there must be some clear and unmistakable affirmative act or series of acts indicating a purpose to repudiate ownership." Id. ¶ 6. While the Appellants rightly state that Murray stands for the proposition that "Oklahoma recognizes abandonment of property or interest in property as a valid defense to a claim of conversion," the trial court found that the Appellee did not abandon its property. See Appellants' Br.-in-chief at 9. Under the deferential standard of review applicable to the findings of fact made by the trier of fact (in this case, the trial judge), reversible error may be demonstrated only by proof that there is no competent evidence to support the judgment. See Hagen, 2007 OK 19See Gowens v. Barstow, 2015 OK 85364 P.3d 644even if the record might also support a conclusion different from that reached by the trial court.") (citation omitted) (emphasis added). Unlike in Murray, in this case there is competent evidence to support the finding that the Appellee did not abandon its collateral, including, among other things, that the Appellee only "sat on its rights" for a few months; hired an investigator to locate its property; and was in contact with Henry regarding the sale and status of its property. Accordingly, there is no reversible error.

¶16 Second, Appellants contend that the trial court erred in its valuation of the allegedly converted property. We disagree and hold that the trial court's determinations of the values of the converted items were based on competent evidence. While it appears that the appraisal on which the trial court relied was made more than two years before the date the items were converted, we do not agree with the Appellants' characterization of the appraisal as "outdated" or "devoid of any evidence" as to the value of items converted. See Appellants' Br.-in-chief at 13. The appraisal was, as the Appellants contend, intended to reflect what someone would pay for the property at the time the appraisal was made. But that does not mean, as the Appellants suggest, that the trial court was merely "shooting from the hip" or otherwise incapable of making a legitimate determination of the items' value on the date of conversion. As the trier of fact, the trial court was empowered to make a determination of value based on the evidence before it. Though the trial court could have made upward or downward adjustments as it saw fit, it declined to do so, see Sept. 16, 2020 Tr. at 74, lns. 3--12, and instead awarded damages in accordance with the 2015 appraised values of the Vent-a-Hood ($14,500.00), the walk-in cooler and freezer ($8,000.00), and the booths, tables, and chairs ($6,000.00), see Sept. 16, 2020 Tr. at 73, lns. 16--24; Pl.'s Ex. 40 (2015 Curtis Restaurant Supply Appraisal). While the folding glass panels, for which the trial court awarded $50,000.00, were not part of the 2015 appraisal, other competent evidence -- including evidence of the folding panels' original purchase price ($90,000.00), plus the fact that the panels were part of the leasehold improvements for which more than $140,000.00 was allocated in the purchase agreement between the Appellee and ANB -- supports the trial court's $50,000.00 valuation. Because there was evidence sufficient to sustain the trial court's damages awards for each of the items the trial court found were converted, there was no reversible error related to the trial court's valuation of the converted items.

¶17 Third, Appellants contend that the trial court erred in finding that the items attached to the realty were movable goods capable of being removed without material harm. Once again, we disagree and hold that the trial court did not err. Its determination regarding the status of the items as movable goods capable of being removed without material harm was within the range of evidence adduced at trial, including the terms of several agreements indicating that the purchase agreement between the Appellee and ANB intended to sever the fixtures and leasehold improvements from the realty, not to mention the testimony of Smith, who was unable to characterize whether the removal of some items would constitute material harm, and Henry, who told Smith he would clear the space before Torchy's Tacos mobilized to start construction. See Aug. 27, 2020 Dep. Jeremy Smith at 11, lns. 2--12. Because there was competent evidence to support the trial court's findings as to the severance of the Vent-a-Hood, the walk-in cooler and freezer, and the folding glass panels, there was no reversible error.

¶18 Appellants next contend that the trial court erred in awarding $10,350.00 as the reasonable cost of recovery of the items converted. While the Appellants recognize that under 23 O.S. § 64See Appellants' Br.-in-chief at 23. Because the Appellee's asset recovery specialist might have spent time pursuing items that were not located, and cannot specifically identify how much time he spent pursuing the items for which the trial court awarded damages, the trial court cannot (so the Appellants' logic goes) award damages at all. We disagree. Although the Appellee asked the trial court to award reimbursement of recovery costs for work for which there was no bill, the trial court only awarded "expenses in connection with the pursuit of the items . . . only in the amount of Mr. Eller's bill that has been admitted into evidence, $10,350.00." See Sept. 16, 2020 Tr. at 72, lns. 18--22. Because the trial court had the opportunity to hear and review competent evidence, including Eller's bill and testimony regarding his efforts to locate the converted items, we will not second-guess the trial court's award. Trial judges are, after all, "in the best position to evaluate the demeanor of the witnesses and to gauge the credibility of the evidence." Stephens Production Co., 2017 OK 36

¶19 Lastly, Appellants contend that the trial court erred when it refused to enter written findings of fact and conclusions of law. See Sept. 16, 2020 Tr. at 73--74. Under 12 O.S. § 611

to state its findings, except generally . . . unless one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state, in writing, the findings of fact found, separately from the conclusions of law.

The Oklahoma Supreme Court has held that "[t]he central purpose behind [this statute] is that a non-prevailing party will be able to intelligently take exception to a trial court's ruling." Gaddis v. City of Bartlesville, 1990 OK 36790 P.2d 1108accord Coleman v. James, 1917 OK 601169 P. 1064Weavel v. U.S. Fidelity & Guaranty Co., 1993 OK CIV APP 4848 P.2d 54Alonzo v. Alonzo, 1996 OK CIV APP 48917 P.2d 1014Arthur v. Arthur, 1959 OK 148354 P.2d 199German State Bank of Elk City v. Ptachek, 1918 OK 10169 P. 1094Smith v. Harrod, 1911 OK 192115 P. 1015

THE COURT: We'll be back on the record, please . . . . The Court's taken a lunch recess, invited counsel and the parties and their representatives back to render a decision in this action.

I find the issues in favor of the Plaintiff on conversion. I find damages in the amount of $78,500, plus interest from March 1st, 2017, at the rate of 6 percent to this date.

I award, pursuant to the statute, expenses in connection with the pursuit of the items or their--that were converted or their value only in the amount of Mr. Eller's bill that has been admitted into evidence, $10,350.00.

I do not determine that punitive damages are merited, and find in the Defendant Henry's favor in that regard.

Mr. Hodges, prepare a suitable journal entry and circulate it to counsel.

Anything else for this record?

MR HODGES: Nothing from the Plaintiff, Your Honor.

MS CLEMENT: Your Honor, I would ask for findings of fact and conclusions of law, as well as clarity on whether this award is to both Henry Real Estate, LLC and Henry--Tony Henry individually, or divvy it out to one party or the other?

THE COURT: So, it is joint and several as against both entities. And your request for findings of fact and conclusions of law comes late, and I decline to specifically make findings of fact and conclusions or law.

Sept. 16, 2020 Tr. at 72--73 (all emphases added). Based on the record in this case and the fact that Appellants' § 611 request was made after the trial court had announced its general findings, the trial court was not under any obligation to provide specific findings of fact and conclusions of law.

¶20 Despite Appellants' arguments to the contrary, we also hold that there is competent evidence to support the trial court's judgment -- jointly and severally -- against both Appellants. Appellants contend that, because "this is a civil action based on fault that does not arise out of contract . . . the damages must be several only." See Appellants' Br.-in-chief at 20; cf. 23 O.S. § 15

¶21 Although this case went to trial against both HRE and Henry on the claim of conversion, the evidence in the record demonstrates that this was not a case based on the fault of more than one party. Instead, based on the evidence adduced at trial, Henry is "at fault" (in tort) for his physical actions (e.g., selling the tables and chairs and disposing of the FF&E), see Aug. 27, 2020 Dep. Jeremy Smith at 10, lns. 10--11, which means Henry, and Henry alone--as the Appellee points out--"personally converted [Appellee's] collateral." See Appellee's Answer Br. at 24. The evidence at trial only pointed to one conclusion regarding HRE, namely: that HRE is liable only under the theory of respondeat superior, liability for which is based on a legal relationship between parties rather than on fault. See Fox v. Mize, 2018 OK 75428 P.3d 314respondeat superior is the imputation of an employee's fault to an employer, which may occur even when the employer is without fault or knowledge. See id. (citation omitted); see also Braden v. Hendricks, 1985 OK 14695 P.2d 1343 Scull v. New Mexico, 236 F.3d 588, 599--600 (10th Cir. 2000) ("[V]icarious liability is indirect legal responsibility [and] is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vicariously liable . . . . Under the principles of agency and respondeat superior, vicarious liability may be imposed on a principal or employer for the acts of an agent or employee.") (citation omitted); St. Francis Regional Medical Center, Inc. v. Critical Care, Inc., 997 F. Supp. 1413, 1431 (D. Kan. 1997) ("Under the doctrine of respondeat superior the fault of the employee is imputed to the employer without requiring fault or knowledge on the part of the employer.") (citation omitted). Vicarious liability does not, in other words, constitute liability "based on fault" as defined in 23 O.S. § 15

CONCLUSION

¶22 This Court holds that there is competent evidence to support the trial court's judgment and awards for damages, plus interest thereon, and for expenses in connection with the pursuit of the items Appellants converted against both Appellants jointly and severally. Accordingly, the trial court's September 26, 2020 Journal Entry of Judgment is AFFIRMED in its entirety.

GOREE, P.J., and MITCHELL, J., concur.

FOOTNOTES

See Sept. 14, 2020 Tr. at 106--07.

See Sept. 14, 2020 Tr. at 199, lns. 10--19; cf. id. at 117, ln.24 through 119, ln. 23 & 120, ln. 14 through 121, ln. 9.